**Lynn FOSTER, Plaintiff-Appellant,**

v.

**ARCATA ASSOCIATES, INC.,**
**Defendant-Appellee.**

No. 84–2218.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 15, 1985.

Decided Oct. 2, 1985.

As Amended Oct. 25, 1985.

Saul M. Weingarten, Seaside, Cal., for plaintiff-appellant.

Michael Salinsky, John C. Cook, Christopher W. Katzenbach, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendant-appellee.

Before WALLACE and POOLE, Circuit Judges, and STEPHENS,* District Judge.

POOLE, Circuit Judge:

Appellant Lynn Foster appeals the district court's grant of summary judgment in favor of Arcata Associates, Inc., (Arcata) on Foster's claims of (1) sex discrimination under Title VII, (2) age discrimination under the ADEA, and (3) violation of the Equal Pay Act. Foster's claims arose out of Arcata's failure to offer her a position in its office near Las Vegas, Nevada, when

* Honorable Albert Lee Stephens, Senior United States District Judge for the Central District of California, sitting by designation.

the company was forced to phase out its office in Monterey, California, where appellant was employed, and its failure to pay Foster a salary equal to that paid the person whom Arcata hired for the position. We affirm.

## I.

### FACTS

Appellant, a fifty-eight year old woman, was hired in October 1980 as Corporate Contracts Administrator by Arcata, a corporation that provides scientific, engineering, and facilities management support to the government and professional services companies. During the time of appellant's employment until she resigned in April 1982, Arcata's corporate offices were located in Burlingame, California. The company also maintained two field offices in connection with separate services contracts awarded by the United States Army and Air Force. One office was at Fort Ord in Monterey County, California, and the other at Nellis Air Force Base in Las Vegas, Nevada. Although a member of the corporate staff, appellant was stationed at Arcata's Monterey office, pursuant to her express request when she was hired.

Appellant has a college degree in Business Administration, certificates in government contracting, and approximately twenty-five years civil service experience in government contracting. She was hired by Arcata at a starting salary of between $27,000 and $28,000 per year, which was approximately $10,000 less than she had been earning in her previous job with the Department of Energy. As Corporate Contracts Administrator, Foster was responsible for the management of all of Arcata's government contracts.

In August 1981, Arcata hired James Enus as Project Manager for its contract with the Air Force at Nellis Air Force Base. Enus was given full authority to hire personnel subject only to budgetary constraints. The following April, Enus reorganized the Nellis staff and subsequently hired Bill Hamby as Contract Compliance Manager to be responsible for the day to day operations of the Air Force contract.

Hamby had been a weapon systems officer in the Air Force and an operations officer at Nellis. He had received a Master's degree in Public Administration and was employed as a contracting officer for a large government contractor. Hamby was hired at a starting salary of about $37,000 per year.

At the time the decision was made to hire Hamby, appellant was involved in the preparation of a proposal for the renewal of the Fort Ord contract. Her salary, due to a recent adjustment, was $30,000 per year.

Arcata lost its Fort Ord contract in July 1982, and in September, appellant was notified of her termination to be effective in January 1983. In November, Foster filed a complaint with the Equal Employment Opportunity Commission (EEOC), charging sex and age discrimination because she had not been offered Hamby's job in Nevada, and had not been paid Hamby's salary for her work on the Fort Ord contract.

Appellant continued her employment through the end of the year and was instrumental in phasing out the company's operations in Monterey and phasing in Arcata's successor. Like most Arcata employees who lost their jobs when the Fort Ord contract was not renewed, appellant and her husband, a retired naval officer who was also an employee, were offered positions by the successor. Foster's husband accepted the offer, but she refused because the hours did not meet her needs.

In February 1983, however, Arcata hired Foster as Assistant to the Program Manager for the Nellis Air Force Base contract at a salary of $37,500 per year, the same as Hamby was receiving. After only six weeks, appellant resigned due to what she claimed were incidents of hostility resulting from her lawsuit.

On April 25, 1983, the EEOC issued to appellant a Notice of Right to Sue. This lawsuit was filed on June 22, 1983, charging sex and age discrimination in violation of Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e et seq.), the Age Discrimination in Employment Act (ADEA) (29 U.S.C. § 623), the Equal Pay Act (29 U.S.C.

§ 206(d) ), and the 1866 Civil Rights Act (42 U.S.C. § 1981). Appellant requested back pay, damages, attorney's fees and costs.

On January 11, 1984, Arcata moved for summary judgment. The district court granted the motion on June 13, 1984, finding:

(1) Appellant's claim of age and sex discrimination failed to state a claim under 42 U.S.C. § 1981, which prohibits only race discrimination.

(2) Appellant's Equal Pay Act claim failed because appellant did not show that Arcata's separate offices near Fort Ord and Nellis Air Force Base were "the same establishment."

(3) Appellant did not meet her burden of establishing a prima facie case of sex or age discrimination by producing evidence that she was qualified for Hamby's position. Moreover, even if she had met her burden, Arcata demonstrated legitimate nondiscriminatory business reasons for not offering her the Nellis job.

(4) Appellant failed to produce objective evidence of intentional wage discrimination to support her Title VII claim.

Foster does not appeal the district court's ruling on her § 1981 claim, but contends that the trial court incorrectly resolved against her certain material issues of fact when it granted summary judgment on the other issues.

We consider first, in Part II, Foster's claims of unlawful discrimination in hiring. We turn in Part III to her claims of wage discrimination in hiring. Finally, in Part IV, we consider her discovery claim.

## II.

### CLAIMS OF DISCRIMINATORY HIRING: TITLE VII AND ADEA

█ Plaintiffs alleging discrimination under Title VII and the ADEA may proceed according to either of two theories: disparate treatment or disparate impact. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977) (Title VII); *Sakellar v. Lockheed Missiles & Space Co.*, 765 F.2d 1453, 1456 (9th Cir.1985) (ADEA); *Casillas*

*v. United States Navy*, 735 F.2d 338, 342 (9th Cir.1984) (Title VII); *Equal Employment Opportunity Commission v. Borden's, Inc.*, 724 F.2d 1390, 1392 (9th Cir. 1984) (ADEA). The disparate treatment theory is appropriately employed by aggrieved employees claiming that they were intentionally treated less favorably because of their race, color, religion, sex, or national origin under Title VII, *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) (quoting *Teamsters*, 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15), or because of their age under the ADEA, *Borden's*, 724 F.2d at 1392. Proof of discriminatory motive is required under a disparate treatment theory, although such motive may be inferred in some situations from the mere fact of differences in treatment. *Teamsters*, 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15. In contrast, disparate impact cases typically involve employment practices which, although facially neutral, fall more harshly on one group than another and cannot be justified by business necessity. *See United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 713 n. 1, 103 S.Ct. 1478, 1481 n. 1, 75 L.Ed.2d 403 (1983); *Teamsters*, 431 U.S. at 335 n. 15, 97 S.Ct. at 1855 n. 15; *Casillas*, 735 F.2d at 342.

█ Foster does not argue discrimination on the basis of disparate impact; she claims that Arcata intentionally deprived her of an employment opportunity because of her sex and age. In the leading case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth the basic allocation of burdens and the order of proof for Title VII cases alleging disparate treatment. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The same analysis applies to disparate treatment claims arising under the ADEA. *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983); *Douglas v. Anderson*, 656 F.2d 528, 531 (9th Cir.1981). Under *McDonnell Douglas*, the plaintiff, who bears the burden of persuading the trier of

fact by a preponderance of the evidence that there has been discrimination, must first make out a prima facie case of discrimination. If the plaintiff succeeds, the duty of going forward shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment decision. Should the defendant succeed in articulating a nondiscriminatory explanation, the plaintiff's advantage is neutralized and the responsibility then reverts to plaintiff to negate the defendant's excuse by showing that the proffered reason is but a pretext for discrimination. This responsibility of preponderating merges with the plaintiff's ultimate burden which is to persuade the court that she has been a victim of intentional discrimination. 411 U.S. at 802–04, 93 S.Ct. at 1824–25; *Aikens,* 460 U.S. at 715, 103 S.Ct. at 1481–82; *Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1080, 1093; *Hagans v. Clark,* 752 F.2d 477, 481 (9th Cir.1985). The fact finder must then resolve any ultimate factual dispute about whether the defendant's conduct was discriminatory within the meaning of Title VII. *Aikens,* 460 U.S. at 715, 103 S.Ct. at 1482; *Wall v. National Railroad Passenger Corporation,* 718 F.2d 906, 909 (9th Cir.1983).

■ On a motion for summary judgment in discrimination cases, the *McDonnell Douglas* order of proof and shifting of burdens must be viewed in light of the traditional test for granting summary judgment. *See Steckl,* 703 F.2d at 393. That test is whether the moving party has demonstrated that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Alaska v. United States,* 754 F.2d 851, 853 (9th Cir.1985). Although courts are generally cautious about granting summary judgment when motivation and intent are at issue, as in Title VII and ADEA cases, such relief may nonetheless be appropriate. *Steckl,* 703 F.2d at 393. One purpose of the allocation of burdens in Title VII and ADEA actions is to enable the district courts to identify meritless suits and dispense with them short of trial. *Id.,* at 393–94; *Anderson,* 656 F.2d at 535. Summary judgment, judiciously applied, is an appropriate vehicle for accomplishing this objective.

■ The task of this court when reviewing the grant of summary judgment is identical to that of the trial court. We must determine de novo, while viewing the evidence in the light most favorable to the appellant, whether Arcata has demonstrated the absence of any genuine issues of material fact and its entitlement to judgment as a matter of law. *Alaska,* 754 F.2d at 853.

## A. Prima Facie Case of Discrimination

■ To establish a prima facie case of intentional discrimination sufficient to survive a motion for summary judgment, appellant must identify actions by Arcata that if unexplained, give rise to an inference of discriminatory conduct. *Furnco,* 438 U.S. at 576, 98 S.Ct. at 2949; *Teamsters,* 431 U.S. at 358, 97 S.Ct. at 1866. Foster is not required to prove her prima facie case by a preponderance of the evidence on motion for summary judgment. At this stage of the proceedings, the district court cannot try issues of fact or resolve them in favor of one party or the other. Rather, the court may only determine whether the plaintiff has produced evidence sufficient to support a reasonable inference of the existence of the fact at issue.[1] Hence, appellant need only adduce facts which, if believed, could generate the inference that she was probably denied the job opportunity at Nellis because Arcata applied discriminatory age or sex criteria in its decision to fill the position. *See Steckl,* 703 F.2d at 393. Mere assertions of discriminatory motive and intent, however, are inadequate. *Id.* A party opposing

---

1. In *Burdine,* the Court noted that *McDonnell Douglas* should have made it apparent that in the Title VII context, "prima facie case" is used to denote the establishment of "a legally mandatory, rebuttable presumption," rather than to "describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue." In the context of a motion for summary judgment, however, "prima facie case" does refer to the plaintiff's burden of production.

summary judgment must, in a manner "as would be admissible in evidence," set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The facts that a plaintiff must assert to raise an inference of discrimination under Title VII and the ADEA have not been predetermined. In *McDonnell Douglas,* the Supreme Court identified one appropriate model for establishing a prima facie case of disparate treatment.[2] The Court, however, has repeatedly noted that the *McDonnell Douglas* four-part test is neither exclusive nor rigid, and that the facts sufficient to raise an inference of discrimination necessarily will vary depending upon the situation. *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; *Burdine,* 450 U.S. 253 n. 6, 101 S.Ct. at 1093 n. 6; *Furnco,* 438 U.S. at 575–76, 98 S.Ct. at 2949.

In this case, appellant demonstrated that she is a member of a protected class based on her age (fifty-five at the time Arcata hired Hamby) and sex (female). She also succeeded in raising an issue of fact concerning whether she was qualified for the position at Nellis. We disagree with the district court on this point. The district court inferred that Foster was not qualified for the Nellis position because she produced no evidence that she was as qualified for the position as Hamby. In the context of a prima facie case of discrimination on motion for summary judgment, however, Foster was required only to produce evidence sufficient to indicate a genuine factual dispute about whether she possessed the minimum qualifications for the job, not whether she was as qualified or more so than the person whom Arcata selected. A review of the record has convinced us that the appellant met this requirement.

The district court found that James R. Enus, who was employed by Arcata as the Program Manager for the Nellis Air Force Base contract, created the position of Contract Compliance Manager because of his perceived need for a person with a technical background and familiarity with Nellis weapons systems and procedures who could provide close liaison with the Air Force. This conclusion is supported by the declarations of Enus and Buck Wong, Chief Executive Officer of Arcata, in support of Arcata's motion for summary judgment, and by Wong's deposition testimony. In his declaration, Enus stated that he considered Hamby "uniquely qualified" for the position. Hamby possessed experience as a weapon systems officer in the Air Force and had been employed as an operations officer for a large government contractor approximately three years. In addition, he had earned a Master's degree in Public Administration.

Appellant, in contrast, was never a member of the armed forces, but she did have approximately twenty-five years of government contracting experience, mostly high level. In her deposition and subsequent declaration in opposition to Arcata's motion for summary judgment, Foster states facts which, if true, could justify an inference that she was qualified for Hamby's position. For example, appellant claims that she had been performing all contractual functions for both the Nellis and the Fort Ord projects for one-and-one-half years in her position as Corporate Contracts Administrator, and that Hamby was hired to do the same work, but on a smaller scale. Nonetheless, Hamby, younger and a man, was hired at a salary approximately $7500 more than she was receiving. Appellant also asserted that after she filed her discrimination complaint in November 1982, Hamby's job title was changed to give the impression of additional responsibility. She challenged Arcata's contention that her

---

**2.** The disparate treatment model for a prima facie case of discrimination described by the Supreme Court in *McDonnell Douglas* required the plaintiff to show:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants;

(iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802, 93 S.Ct. at 1824 (footnote omitted).

government contracting experience was limited solely to procurement, and submitted her resume of qualifications as proof that her expertise was of a larger scope than Arcata described. Appellant argued that the fact that Arcata submitted her name and resume as part of its proposal for the Nellis contract, further indicates her qualification for the position.

Appellant thus satisfied her burden of presenting evidence sufficient to generate a genuine issue of material fact about her qualification for the Nellis position. The disputed factual issues are whether the position filled by Hamby required technical expertise and whether she possessed the requisite qualifications for that position. Such factual issues may not be resolved in favor of the moving party on summary judgment when, as here, the adverse party has supported its position by evidentiary materials as provided in Rule 56. It is enough that these materials consist of the party's own sworn deposition testimony and declaration in opposition to the motion for summary judgment.

In *McDonnell Douglas,* the court required the plaintiff to demonstrate not only that he was qualified for the job opportunity he was denied, but also that he applied for that job. Foster admits that she did not apply for Hamby's job. She claims, however, that the reason she did not apply was because the job opening was intentionally kept secret from her. Arcata denies appellant's claim of secrecy, but does not challenge her contention that she was not made aware of the opening.

We need not reach whether Foster's failure to apply for the job position is fatal to her prima facie case. Even if the failure by Arcata to notify Foster of the opening might give rise to an inference of discrimination consistent with the other inferences we have found, our consideration of the second and third prongs of the *McDonnell* test is dispositive of this issue.

**B. Legitimate Nondiscriminatory Reasons**

■ Arcata alleges three nondiscriminatory reasons for its decision to hire Hamby for the Nellis position. First, the company contends that Foster was never considered for the position because she had previously communicated a willingness to work only in Monterey. This claim finds support in Foster's own deposition testimony in which she stated that when Arcata interviewed her in October 1980, she conditioned her employment on being stationed in the Monterey Peninsula area. In a letter to Buck Wong in June 1981 pertaining to an increase in her level of compensation, appellant confirmed that she would accept a position only in Monterey. That letter also stated that appellant had agreed to travel back and forth to Nellis or Burlingame despite the personal hardships that such travel would cause.

Buck Wong's declaration in support of Arcata's summary judgment motion is consistent with Foster's deposition testimony. Wong stated that when Foster was hired, she "made it clear" that she would accept the position only if stationed in Monterey. Wong also stated that he agreed to that arrangement, although Foster was on the corporate staff and the company's corporate headquarters were located in Burlingame, in return for Foster's acceptance of a $28,000 per year salary. James R. Enus, whom Wong claims was solely responsible for hiring Hamby, stated in his declaration that he was unaware that Foster wished to be considered for the position. Enus said that Foster "never expressed any interest in filling the position filled by Mr. Hamby, nor did she ever indicate to me any desire to relocate to Nellis. I never considered Ms. Foster as a candidate for the job * *."

Second, Arcata claims that its decision was nondiscriminatory because Foster was not qualified for the position, or at least if she did have the minimum qualifications, Hamby was the more qualified candidate.

Third, the company contends that when the decision was being made to hire a Contract Compliance Manager at Nellis, Foster could not have been spared from her work in Monterey because she was an integral part of the team responsible for preparing

the Fort Ord contract proposal. Thus, sound business judgment was the basis for its hiring decision.

We are satisfied that Arcata met its burden of articulating a legitimate, nondiscriminatory reason for not considering or hiring Foster for Hamby's position. Having found that Arcata stated facts which, if true, were sufficient to rebut the inference of discrimination, the burden now returns to Foster to demonstrate that Arcata's explanation was but a pretext. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1285.

### C. Pretext

Appellant challenges Arcata's claim that she was not considered for the job at Nellis because she had made herself unavailable by communicating her intention only to work in Monterey. In her declaration in opposition to Arcata's motion for summary judgment, appellant stated that she only expressed a preference for working in Monterey, and not that she would refuse employment elsewhere. This statement contradicted her prior deposition testimony that she conditioned her employment on being located in Monterey, and that the condition was repeated in her June 1981 letter to Buck Wong. Foster characterized the purpose of her letter to Wong as an effort to "clear the air and bring to Wong's attention the inequities [in her salary] and not to confirm that I would only work in Monterey." Foster stated that

Arcata knew I needed and wanted to work, and assigned me to jobs in Nellis, Sacramento and Burlingame. I expressed interest in working at Burlingame and Nellis if I were properly compensated. These discussions were held with Barnett and Smothers, both Vice Presidents of Arcata.

Appellant also contends that she expressed an interest in the Nellis position by the fact that she had been responsible for management of the Nellis contract and had worked at Nellis when required during 1980–82.

The district court disregarded appellant's declaration in opposition to the motion for summary judgment to the ex-

tent that it was contrary to her deposition testimony, based on our decision in *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540 (9th Cir.1975). In that case, this court refused to permit the appellant to create his own issue of fact by an affidavit contradicting his prior deposition testimony. We quoted a decision by the Second Circuit in which that court noted:

[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

520 F.2d at 544 (quoting *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969)).

We agree with the district court that *Radobenko* is apposite. Appellant's declarations that she only expressed a preference for working in Monterey and did not refuse to work elsewhere are in direct contradiction with her deposition testimony that she conditioned her initial employment on being in Monterey and continued to adhere to that condition in June 1981. Consequently, we consider as credible only appellant's deposition testimony on this subject. Thus, for appellant to raise an inference that Arcata's proffered reason for hiring Hamby was pretextual, she must present evidence sufficient under Rule 56 to indicate that, despite her original expression of a willingness to work only in Monterey, she subsequently was effective in communicating her availability for work at Nellis to the person or persons responsible for the hiring decision. This she did not do.

The uncontradicted record shows that Enus was responsible for hiring Hamby, and appellant failed to articulate facts indicating that Enus was aware that she was interested in the position. Buck Wong testified in his deposition, and both he and Jim Enus stated in their declarations, that Wong, as Chief Executive Officer of Arcata, had delegated to Enus full authority to hire staff in connection with the Nellis contract, subject only to budgetary constraints. Appellant challenged these state-

ments by Wong and Enus by charging that Enus was required to, and did, obtain Wong's approval for his decision to hire Hamby.

Although Enus stated in his declaration that he met with Wong, Barnett, and Smothers to discuss his reorganization plan and the importance of having an on-site assistant at Nellis, he also stated

> * * * I was not specifically instructed to hire Mr. Hamby or anyone else. It was my understanding that I could use my own judgment in hiring an assistant, and that my only constraint was to stay within the contract budget. At no time during the meeting did we discuss Lynn Foster's age or sex, or discuss Ms. Foster in any manner at all regarding a relocation to Nellis AFB.

Enus further stated that Foster never expressed any interest in filling Hamby's position nor did she indicate to him any desire to relocate to Nellis. Consequently, Enus did not even consider Foster for the position. Appellant has not produced any evidence to indicate otherwise.

██ Appellant attempts to argue that since she had told Smothers and Barnett that she was available for work at Nellis, this communication was sufficient to create an inference that she was considered and rejected because of her age and sex. This argument fails, however, because appellant did not present facts showing that Smothers or Barnett ever communicated this information to Enus or Wong. Both Enus and Wong denied any knowledge of such information. Moreover, appellant produced no evidence to contradict the statements of Wong and Enus indicating that Enus and Enus alone, selected Hamby.

██ We conclude that the reason Foster was not considered for Hamby's position was not due to any discriminatory animus based on her age or sex but rather,

because she failed to make her availability for work at Nellis known to Enus or Wong. Title VII does not require an employer to monitor continuously the job-related desires and preferences of its employees. Employers have no obligation to canvass their employees for preference changes before filling job openings, as appellant in effect argues. Employees must assume responsibility for making application for positions when the position openings are known. In cases where, as here, the job opening was not announced, then the employee must demonstrate that the employer was aware of her availability for the position. To survive a motion for summary judgment, the employee is required to articulate specific facts indicating that despite the employer's awareness of her job availability, she was not hired because of impermissible considerations under Title VII and the ADEA. Foster failed to meet this burden by presenting facts showing that Arcata's legitimate nondiscriminatory reason for not hiring her, which was her stated position of unavailability for the job, was pretextual.

Because Foster failed to produce evidence from which we could infer that Arcata's reason for not considering her was pretextual, we need not address whether pretext was demonstrated in connection with Arcata's other claimed reasons. Accordingly, we affirm the decision of the district court on this issue.

## III.

### CLAIMS OF DISCRIMINATORY WAGES: EQUAL PAY ACT, TITLE VII, AND ADEA

#### A. *Equal Pay Act*

██ Appellant also challenges the district court's dismissal of her claim under the Equal Pay Act, 29 U.S.C. § 206(d)(1) (1982).[3] That statute prohibits an employer

---

**3.** The Equal Pay Act, 29 U.S.C. § 206, provides in relevant part:

> (d)(1) No employer having employees subject to any provisions of this section [of the Fair Labor Standards Act] shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees

in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a

from engaging in sex-based wage discrimination by paying different wages to employees of different sexes within any establishment for jobs that require substantially equal skill, effort and responsibility, and which are performed under similar working conditions. *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974); *Spaulding v. University of Washington,* 740 F.2d 686, 696–99 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984); *Equal Employment Opportunity Commission v. Maricopa County Community College District,* 736 F.2d 510, 513 (9th Cir.1984); *Hein v. Oregon College of Education,* 718 F.2d 910, 913 (9th Cir.1983); *Gunther v. County of Washington,* 623 F.2d 1303, 1309 (9th Cir.1979), *aff'd on other grounds,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). The district court determined that appellant was precluded as a matter of law from succeeding on her Equal Pay Act claim because Arcata's Nellis and Fort Ord offices were distinct and separate establishments. We review the court's grant of summary judgment on this basis de novo and affirm.

The term "establishment" is not expressly defined in the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (1982); however, the Supreme Court has held that it refers to a "distinct physical place of business," as opposed to an entire business or enterprise. *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 496, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945) (construing "retail establishment" exemption of the Fair Labor Standards Act, 29 U.S.C. § 213(a)(2) ). This interpretation was adopted by the Secretary of Labor for purposes of administering the Equal Pay Act. 29 C.F.R. 800.108 (1982); *Jacobson v. Pitman-Moore, Inc.,* 573 F.Supp. 565, 568 (D.Minn.1983); *Gerlach v. Michigan Bell Telephone Co.,* 448 F.Supp. 1168, 1172 (E.D.Mich.1978). When considering the single establishment issue, federal courts have consistently rejected the extension of the statutory establishment requirement to separate offices of an employer that are geographically and operational-

ly distinct. *Bartelt v. Berlitz School of Languages of America, Inc.,* 698 F.2d 1003, 1007 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983); *Jacobson,* 573 F.Supp. at 567–68; *Alexander v. University of Michigan-Flint,* 509 F.Supp. 627, 629 (E.D.Mich.1980); *Wetzel v. Liberty Mutual Insurance Co.,* 449 F.Supp. 397, 405–07 (W.D.Pa.1978); *Gerlach,* 448 F.Supp. at 1172; *Shultz v. Corning Glass Works,* 319 F.Supp. 1161, 1163–64 (W.D.N.Y.1970), *modified on other grounds,* 474 F.2d 226 (2nd Cir.1973), *aff'd,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *cf. Brennan v. Goose Creek Consolidated Independent School District,* 519 F.2d 53, 58 (5th Cir.1975) (single establishment based upon highly centralized control of hiring, wages, work assignments, scheduling and daily job duties in local elementary school district).

In *Jacobson,* 573 F.Supp. 565 (D.Minn. 1983), a case similar to this one, the court held that a local branch of a company with offices nationwide was a "separate establishment," and thus plaintiff's salary could be compared only with other employees in the local office for purposes of establishing an Equal Pay Act violation. 573 F.Supp. at 568. Similarly, in *Gerlach v. Michigan Bell Telephone Co.,* 448 F.Supp. 1168 (D.C. Mich.1978), each individual office of the telephone company was considered a "separate establishment." We had occasion to consider the issue in *Bartelt v. Berlitz School of Languages of America, Inc.,* 698 F.2d 1003 (9th Cir.1983), and ruled that language schools owned by the same corporation were "separate establishments." Thus, the plaintiffs, who were female directors of Berlitz schools, could not succeed in establishing an Equal Pay Act claim by comparing their salaries with the salaries paid to male directors at other Berlitz schools. *Id.* at 1005–07.

▮ We agree with the district court that, as a matter of law, Foster has failed to produce facts sufficient to indicate that Arcata's Nellis and Fort Ord offices are the

merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

same establishments under the Equal Pay Act. Thus, she cannot establish a violation of the Act by comparing her salary to Hamby's. Arcata's Nellis and Fort Ord offices were hundreds of miles apart and operationally distinct. Although the Nellis and Fort Ord contracts were both negotiated from Arcata's corporate headquarters in Burlingame, California, the day-to-day contract performance occurred at the separate sites. Each office was independently managed for different customers (Air Force and Army) with different operational needs. The Nellis facility provided the Air Force with on-site engineering and other technical support services, whereas the Fort Ord project provided the Army with primarily experimental and managerial support. In addition, the Nellis and Fort Ord projects were operated under separate budgets and were managed by separate project managers who had independent decisionmaking authority over members of their staff.

Appellant also has failed to articulate specific facts demonstrating that male employees other than Hamby, and who worked within the same establishment as she, performed substantially equal work for which they were paid more. Consequently, we find no triable issues of fact on appellants Equal Pay Act claim, and affirm the judgment of the district court.

### B. *Title VII*

■ Appellant also claims intentional wage discrimination because of her sex in violation of Title VII. Section 703(a) of that statute makes unlawful differentials in wages on the basis of a person's sex.[4] *County of Washington, Oregon v. Gun-*

*ther,* 452 U.S. 161, 168, 101 S.Ct. 2242, 2247, 68 L.Ed.2d 751 (1981); *Spaulding,* 740 F.2d at 700. In *Gunther,* the Supreme Court affirmed our holding, 623 F.2d at 1313, that a Title VII cause of action exists outside the scope of the Equal Pay Act. The court, however, did not determine "the precise contours of lawsuits challenging sex discrimination in compensation under Title VII." 452 U.S. at 181, 101 S.Ct. at 2254.

We have held that the coverage of Title VII is much broader than that of the Equal Pay Act. *Bartelt,* 698 F.2d at 1005. Unlike the Equal Pay Act, Title VII does not contain a "single establishment" requirement. *Id.* at 1007. However, when a Title VII claimant contends that she has been denied equal pay for substantially equal work, as here, Equal Pay Act standards apply.[5] *Gunther v. County of Washington,* 623 F.2d 1303, 1318 (9th Cir.1979), *aff'd,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751; *Piva v. Xerox Corp.,* 654 F.2d 591, 598 & n. 5 (9th Cir.1981) (citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) ).

■ The Equal Pay Act standards require the plaintiff to bear the initial burden of showing that: (1) the work of the employees of one sex required the exercise of substantially equal skill, effort, and responsibility and was performed under working conditions similar to that of employees of the opposite sex; and (2) the pay of men and women was unequal. *Piva,* 654 F.2d at 598. The basic allocation of burdens and the order of proof for Title cases alleging disparate treatment, discussed *supra* at

---

**4.** Section 703(a) of Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" or to "limit, segregate, or classify his employees or applicants" because of sex. 42 U.S.C. § 2000e-2(a).

**5.** When a Title VII wage discrimination claim is not based on an equal work theory, it must be analyzed separately under Title VII standards. *Gunther,* 623 F.2d at 1318; *see Spaulding,* 740 F.2d at 700–709 (applying disparate treatment and disparate impact analyses).

Foster also advanced a "comparable worth" theory in support of her disparate treatment model of wage discrimination under Title VII. The district court ruled against this claim. Apart from the fact that Foster produced no objective evidence indicating sex-based wage discrimination, this circuit has now held that such a claim may not be founded on Title VII. *See American Federation of State, County, and Municipal Employees v. Washington,* 770 F.2d 1401 (9th Cir.1985). The district court's ruling was therefore correct.

1459, apply here. For purposes of summary judgment, Foster need only produce evidence sufficiently specific to support a reasonable inference that the facts required for her prima facie case are true. The burden then shifts to the employer to demonstrate that the unequal pay results from a merit system, seniority system, a system linking earnings to productivity, or any factor other than sex. *Id.* at 598–99; *Corning Glass Works*, 417 U.S. at 196, 94 S.Ct. at 2229; 42 U.S.C. § 2000e–2(h).

The district court rejected appellant's claim because it found that she failed to set forth evidence sufficient to establish a prima facie case of intentional wage discrimination. We agree. Although Foster succeeded in showing that she was paid $7500 less as Corporate Contracts Administrator than Hamby was paid as Contract Compliance Administrator for the Nellis contract, she did not present facts from which an inference can arise that her position and Hamby's were substantially equal.

We evaluate whether appellant established the basis for an inference that her job and Hamby's required the exercise of substantially equal skill, effort, and responsibility, by considering actual job performance and content, not job titles, classifications or descriptions. *Gunther*, 623 F.2d at 1309. The record indicates that the two positions were created at different times, for substantially different purposes, and thus did not require the same kinds of skills and performance.

Arcata acquired the Nellis contract in 1979, the purpose of which was to provide the Air Force with "Operation and Maintenance of Range Instrumentation." This required Arcata to provide primary engineering and other technical support services. Initially, the contract concerned a 2.4 million dollar project. In October 1980, Arcata was awarded the 8.4 million dollar Fort Ord contract. That contract was to provide a Scientific Support Laboratory for the Army, which involved primarily experimental, managerial and support services.

Foster was hired as Corporate Contracts Administrator at approximately the same time as the Fort Ord contract was awarded. She was responsible for the management of all Arcata's government contracts, including insuring compliance with contract requirements and negotiating contract terms and conditions. Her work occasionally required her to travel to the corporate headquarters in Burlingame, to Nellis, and to Sacramento, although her permanent station was in Monterey.

In late 1981, the government notified Arcata that it would be accepting competitive bids on the Fort Ord contract. Arcata was out bid in July 1982, and the contract was phased out by the end of that year. In contrast, Arcata's Nellis contract had grown substantially. By 1983, it was valued at about 5.3 million.

Hamby was hired in May 1982, when the future of the Fort Ord contract was uncertain. He was hired by James Enus to perform the day-to-day management of the Nellis contract. Essentially, Hamby was to be a "trouble shooter," responsible for the direct handling of problems stemming from the contract operations. His job thus required constant interaction with the Air Force and permanent station in the Las Vegas area. These requirements were substantially different from those of Foster's job.

We conclude that the district court was correct in determining that, as a matter of law, appellant could not succeed in demonstrating that she was the victim of intentional wage discrimination under Title VII. Even though she was paid less than Hamby, her claim cannot succeed because the responsibilities of their positions were not substantially equal.

## C. ADEA

Foster also claims intentional wage discrimination because of her age in violation of ADEA, 29 U.S.C. § 623(a)(1). Because Foster failed to present facts from which an inference can arise that her position and Hamby's were substantially equal, *see* discussion *supra* Part III. B, we agree with the district court that Foster failed to es-

tablish a prima facie case of intentional wage discrimination.

## IV.

### DISCOVERY CLAIM

■ Appellant finally contends that the district court abused its discretion in proceeding to summary judgment when discovery had not been completed. We have stated that a district judge has wide latitude in controlling discovery, and its rulings will not be overturned in the absence of a clear abuse of discretion. *White v. City of San Diego*, 605 F.2d 455, 461 (9th Cir.1979); *Canadian American Oil Co. v. Union Oil Co.*, 577 F.2d 468, 473 (9th Cir.), *cert. denied*, 439 U.S. 912, 99 S.Ct. 283, 58 L.Ed.2d 258 (1978).

We reject appellant's claim because she failed to follow the proper procedures under the Federal Civil Rules of Procedure for obtaining a continuance or other appropriate discovery order when opposing a motion for summary judgment. Under Rule 56(f),[6] a party may apply for a continuance of the proceedings to permit further discovery. Appellant made no such motion. Consequently, we find that the district court did not abuse its discretion in granting Arcata's motion for summary judgment. *Thi-Hawaii v. First Commerce Financial Corporation*, 627 F.2d 991, 994 (9th Cir.1980).

## V.

### CONCLUSION

Appellant has failed to raise genuine issues of fact concerning her claims of intentional hiring discrimination under Title VII or the ADEA. Her Equal Pay Act claim also fails because she did not articulate facts which, if true, would indicate that men were paid more in the same establishment for substantially equal work. Additionally, because appellant did not show that her job and Hamby's job were "substantially equal," she cannot succeed in

proving a wage discrimination claim under Title VII. We have found no abuse of discretion in the district court's discovery ruling.

The judgment of the district court is **AFFIRMED.**

---

6. Fed.R.Civ.P. 56(f) provides:
   * * * Should it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.