**Charles JOHN, Plaintiff,**

v.

**GEORGIA–PACIFIC CORPORATION, a foreign corporation, Defendant.**

Civ. No. 87–6223–E.

United States District Court, D. Oregon.

May 20, 1988.

Monte C. McKeehen, McKeehen & Salter, Eugene, Or., for plaintiff.

Richard F. Liebman, Scott T. Cliff, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, Or., for defendant.

## OPINION

FRYE, District Judge:

In the matter before the court, defendant, Georgia–Pacific Corporation (Georgia–Pacific), moves the court pursuant to Fed. R.Civ.P. 56(b) for summary judgment in its favor as to plaintiff, Charles John's, first, second, third, fourth, fifth and sixth claims for relief.

## FACTS

John was employed for more than twenty years by Georgia–Pacific at its mill in Eugene, Oregon. At the time of his termination, he was employed as a salaried sander foreman. John was discharged on March 10, 1986. At the time of his discharge, John was fifty-four years old.

In December, 1985, Georgia–Pacific announced a substantial roll back of the wages and benefits of the hourly employees at its plant. The hourly employees initiated a union organizing campaign. Georgia–Pacific opposed unionization and worked to defeat the union efforts. The union election was scheduled to take place on April 3, 1986.

On February 25, 1986, Georgia–Pacific invited hourly employees to discuss employee concerns and complaints with company vice president, Dewey Mobley, and industrial relations manager, Bob Silvis, at a pizza parlor. Among other complaints raised by some hourly workers at this meeting was the practice of "government work." "Government work" means work using company facilities, materials or labor for the benefit of an individual employee rather than for the benefit of Georgia–Pacific.

In early March, 1986, George Foster, head of security for Georgia–Pacific, came from Atlanta, Georgia to Eugene, Oregon to investigate allegations that certain employees at the plant were engaging in "government work." Foster requested that employees come to his hotel room and tell him what they knew about "government work" at the plant. After learning that certain salaried employees, including John, were involved in "government work," Foster asked John and others to write letters explaining their involvement in "government work." On March 5, 1986, John submitted the following letter:

WORK DONE AT PRAIRIE ROAD

1. Some time in the spring of 1979, the carpenters bolted a deck on a new truck bed for me. I furnished the materials.

2. At about the same time I used the company welder at home.

3. There was a fire in # 1 dryer and a number of dryer rolls were heated and bent beyond repair. These are usually cut up and scrapped. I used the rolls that were bent for posts and rails.

4. I had an electrician check wiring on trailer at different time with an O meter.

5. Bill Petrovich did a lot of welding for me at different times, after work hours and I payed by check for work he did using my own materials but using company welder and cutting torch. I have records of cost and materials.

6. Jamie Moffit repaired a tractor front axle for me by rewelding it.

7. Last year I bought plywood at cost. ¼ D.D.D. Exterior at $3.00. Also ¾ exterior A.C. that was a glue test de-lam at $2.00 (14 panels) and some ¾ C.C.C.—$6.00.

8. Over the years that I have been employed at Georgia Pacific I have borrowed a sump pump, jack & air tool and always brought them back in good condition as best as I can remember.

9. OH yes! The carpenters glued an old milk stool back together for me in November of 1985.

10. At this time, this is the work that I have had done at the mill. If there is any problem that I am not aware of, I would sure like to have it brought to my attention.

(s) Chuck John

Chuck John

Sander Foreman

Prairie Road Division

March 5 1986

(Defendant's Memorandum in Support of Motion for Summary Judgment, Ex. G).

On March 10, 1986, John, along with two other salaried employees and the plant manager, were asked to resign. When John refused to resign, he was discharged. On August 4, 1986, John filed a charge of age discrimination against Georgia–Pacific with the federal Equal Employment Opportunity Commission (EEOC) and with the Oregon Bureau of Labor and Industries. On February 10, 1987, an investigator for

the Civil Rights Division, after conducting an investigation into John's claim of age discrimination, informed John that he would be recommending a "no-cause" finding in the matter. On February 17, 1987, John withdrew his complaint for the stated reason that he wished to pursue a private cause of action.

On May 14, 1987, John filed the complaint in this action alleging seven claims for relief as follows:

1. violation of the federal Age Discrimination in Employment Act (ADEA);
2. violation of Oregon's prohibition against age discrimination in employment, O.R.S. 659.030;
3. breach of employment contract;
4. breach of implied covenant;
5. deceit;
6. negligence; and
7. intentional infliction of emotional distress.

John admits that he has engaged in "government work" from time to time during his employment at Georgia–Pacific, but argues that "government work" was a long-standing practice at Georgia–Pacific which was approved by the plant manager and permitted by the company. John argues that "government work" could not justify his discharge from employment.

On December 28, 1987, this court dismissed the seventh claim for relief. Georgia–Pacific now moves for summary judgment on John's remaining claims.

## APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing'

... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*, 106 S.Ct. at 2553.

Assuming that there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* All inferences drawn from the underlying facts must be viewed in a light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate.

## ANALYSIS

### Age Discrimination Under ADEA

Georgia–Pacific moves for summary judgment in its favor as to John's claims for age discrimination on the grounds that there is no direct or circumstantial evidence that John was replaced by a substantially younger employee with equal or inferior qualifications as required by *Douglas v. Anderson*, 656 F.2d 528 (9th Cir.1981).

John concedes that he was replaced with an employee who was less than seven months his junior. However, John argues that an inference of age discrimination sufficient to withstand Georgia–Pacific's motion for summary judgment can be found in the following facts: 1) all four of the employees who were terminated from employment as a result of the "government work" investigation were salaried employees over the age of forty, and 2) seventy-seven percent of salaried employees, but only fifty-six percent of hourly employees, at the Georgia–Pacific plant were over forty years of age at the time of John's termination.

John argues that there is substantial evidence from these facts that the company's asserted policy to discharge workers who engage in "government work" was, in practice, applied only to a class of employees (the salaried workers) in which protected persons are disproportionately represented as compared with hourly workers. John contends that Georgia–Pacific violated federal age discrimination law by applying the "government work" policy in such a manner that only workers over the age of forty were terminated.

█ Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire ... any individual [who is at least 40 years of age but less than 70] ... because of such individual's age." 29 U.S.C. §§ 623(a), 631(a). A litigant can establish a violation of ADEA using either of two related theories: he can show disparate treatment—that he suffered intentional discrimination in employment because of his age, or he can show an 'adverse or disparate impact—that facially neutral employment practices in fact treat more harshly employees in the protected age group. *Cotton v. City of Alameda,* 812 F.2d 1245, 1247 (9th Cir.1987).

In apparent recognition of the fact that there is no evidence, direct or circumstantial, to support an inference that Georgia–Pacific was motivated by age discrimination in terminating John, John relies upon the disparate impact analysis. A disparate impact case involves "employment practices which, although facially neutral, fall more harshly on one group than another and cannot be justified by business necessity." *Foster v. Arcata Assoc.,* 772 F.2d 1453, 1458 (9th Cir.1985). To make out a prima facie case of discrimination under the disparate impact theory, John must show: "(1) the occurrence of certain outwardly neutral employment practices, and (2) a significantly adverse or disproportionate impact on persons of a particular [age] produced by the employer's facially neutral acts or practices." *Spaulding v. Univ. of Wash.,* 740 U.S. 686, 705 (9th Cir.), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984).

The only facts before the court in support of John's claim are that 1) all four of the employees who were terminated subsequent to the "government work" investigation were salaried employees over the age of forty, and 2) there is a higher percentage of persons over the age of forty in salaried positions than in hourly positions.

█ The court concludes that the fact that all four of the employees terminated after the "government work" investigation were over forty is insufficient to establish a disparate impact claim based upon age discrimination in the absence of evidence that hourly workers under the age of forty who engaged in a similar degree of "government work" were spared from discharge. John has failed to present evidence sufficient to create an issue of fact on his federal age discrimination claim.

Georgia–Pacific's motion to dismiss John's federal claim under the ADEA is granted.

█ The remaining claims in John's complaint are based exclusively upon state law. When federal claims are dismissed before trial, the question whether pendent state claims should proceed in federal court is within the sound discretion of the district court. *Schultz v. Sundberg,* 759 F.2d 714, 718 (9th Cir.1985). Generally, dismissal of federal claims before trial dictates that pendent state claims be dismissed. *Id.* This case presents no exceptional circumstances, and therefore this court declines to exercise pendent jurisdiction to decide any state claims.

Georgia–Pacific's motion for summary judgment dismissing John's first, second, third, fourth, fifth and sixth claims for relief is granted.