967 F.2d 584
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Anselmo CHAVEZ, Plaintiff-Appellant,
v.
LOCKHEED MISSILES & SPACE COMPANY, INC., Defendant-Appellee.
 No. 91-15777.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 10, 1992.*
Decided June 18, 1992.
 
 Before FLETCHER, LEAVY and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Anselmo Chavez appeals pro se the district court's order granting summary judgement in favor of Lockheed Missiles & Space Company ("Lockheed") in his employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). Chavez contends that the district court erred by finding that he failed to establish a prima facie case of disparate treatment based on national origin and age. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 "This court reviews a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the correct substantive law." Americana Trading Inc. v. Berrie & Co., No. 88-15334, slip op. 6055, 6060 (9th Cir. June 2, 1992).
 
 
 4
 To establish a prima facie case of intentional discrimination sufficient to survive a motion for summary judgment, Chavez must identify actions by Lockheed that, if unexplained, give rise to an inference of discriminatory conduct. See Foster v. Arcata Associates, Inc., 772 F.2d 1453, 1459-61 (9th Cir.1985) (female employee presented sufficient evidence on claims of sex and age discrimination to create an inference of discriminatory conduct where male employee filled the position), cert. denied, 475 U.S. 1048 (1986). Chavez need only provide facts which, if believed, could generate the inference that he was probably denied a promotion because Lockheed applied discriminatory age or national origin criteria in its decision to fill the position. See Foster, 772 F.2d at 1459.
 
 
 5
 While Chavez is not required to prove his prima facie case by a preponderance of evidence on a motion for summary judgment, mere assertions of discriminatory motive and intent are inadequate. See id.; see also Forsberg v. Pacific Northwest Bell Telephone Co., 840 F.2d 1409, 1419 (9th Cir.1988) ("purely conclusory allegations of discrimination, with no concrete, relevant particulars, will not bar summary judgment"). "Disparate treatment claims under the ADEA 'are analyzed by the same standard used to analyze disparate treatment claims under Title VII.' " Lindahl v. Air France, 930 F.2d 1434, 1437 (9th Cir.1991) (quoting Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1436 (9th Cir.1990)). In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), the Supreme Court identified an appropriate model for establishing a prima facie case of disparate treatment. Foster, 772 F.2d at 1460.[1] Nevertheless, we have held that the "McDonnell Douglas four-part test is neither exclusive nor rigid, and that the facts sufficient to raise an inference of discrimination necessarily will vary depending upon the situation." Id.
 
 
 6
 In August 1986, Lockheed hired Chavez, a Hispanic male then 54 years old, as a production planner. This hourly position required him to prepare written manufacturing plans for assembly line workers. In February 1988, a position opened up in Chavez's department, Structures Manufacturing Engineering ("Manufacturing"), for a process planning supervisor ("supervisor"). Lockheed identified a need to cut escalating costs associated with converting engineering drawings into assembly and production language so that products could be manufactured. Previously, due to a lack of effective communication between the Design Engineering department ("Design Engineering") and Manufacturing, unusable products had been produced, which wasted time and money. Lockheed needed a supervisor who could communicate with Design Engineering at the drawing stage, before production began on the assembly line. Manufacturing Manager Martin J. Gerbasi formed a selection committee, consisting of seven employees (ages 52 to 65), to prioritize the needed qualities of the supervisor and recommend a person. In addition to the ability to establish better communication between Design Engineering and Manufacturing, the committee identified sixteen other qualities and placed a very strong emphasis on design engineering skills and experience.[2] The committee identified eight potential candidates within the company and interviewed four. Chavez was not identified among the potential candidates. Based on a numerical weighting value assigned to each quality, candidate Eric Phelps, who had the highest score, was recommended by the committee and selected by Gerbasi.[3]
 
 
 7
 The district court found that Phelps, a Caucasian male then 44 years old, had worked at Lockheed for 22 years as a design engineer and held responsible positions, including Design Engineer, Sr. and Design Specialist. He ranked high in the position skills and had taken two years of engineering related college courses. Specifically, the committee found that Phelps, a cost-conscious individual, had outstanding communication and leadership skills which were necessary to supervise approximately 50 hourly and salaried individuals.
 
 
 8
 In contrast, Chavez had two undergraduate degrees, in business and economics from the University of Nebraska and in business from the University of Albuquerque. His prior work experience was limited to supervisory positions in manufacturing related positions and quality assurance. Chavez had no formal education or work experience as a design engineer. He alleged that Lockheed fabricated the need for design engineering experience and bypassed the normal selection process to exclude him. Nevertheless, Lockheed offered in support of its motion for summary judgment the declarations its employees, Gerbasi, and Wayne Lazar, Employee Relations Advisor for the Space Systems Division, which contradicted Chavez's allegations. Gerbasi's and Lazar's declarations stated that the selection process followed company procedure. In addition, Gerbasi's declaration stated that in order to establish better communication with the design engineers, a supervisor needed experience in that area. Consequently, Chavez did not meet the second prong of the McDonnell Douglas test by showing that he possessed the minimum qualifications for the position. Cf. Foster, 772 F.2d at 1460. Aside from his own statement that his qualifications were clearly superior to Phelps, Chavez did not present sufficient evidence to support an inference of discrimination based on his national origin or age. See Forsberg, 840 F.2d at 1419; cf. Foster, 772 F.2d at 1461.[4]
 
 
 9
 Thus, Chavez's failure-to-promote claim essentially rested on the fact that he was a Hispanic male and 54 years old. These facts alone are insufficient to suggest that the actions taken by Gerbasi were based on anything other than Phelp's superior qualifications for the position. See Forsberg, 840 F.2d at 1419; cf. Foster, 772 F.2d at 1461. Therefore, the district court did not err by finding that Chavez failed to establish a prima facie case of discrimination and properly granted summary judgment. See Forsberg, 840 F.2d at 1419.
 
 
 10
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The disparate treatment model for a prima facie case of discrimination described by the Supreme Court in McDonnell Douglas required the plaintiff to show:
 (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
 411 U.S. at 802 (footnote omitted). "The disparate treatment theory is appropriately employed by aggrieved employees claiming that they were intentionally treated less favorably because of their ... national origin under Title VII or because of their age [40-70] under the ADEA." Foster, 772 F.2d at 1458 (citations omitted).
 
 
 [2]
 The sixteen qualities identified by the committee were: (1) availability (must); (2) able to be promoted (must): (3) rapport with manager (must); (4) two years of college or equivalent (low); (5) knowledge of planning (medium); (6) knowledge of procedures (high); (8) knowledge of engineering (high); (9) knowledge of manufacturing (medium); (10) written communication skills (high); (11) leadership ability (high); (12) closure (high); (13) accountability (medium); (14) interpersonal skills (medium); (15) reasoning/judgment (high); and (16) inovativeness (medium)
 
 
 [3]
 Phelps received a score of 932, while the lowest score was 601
 
 
 [4]
 Chavez also argues that Phelps did not complete two years of college courses in engineering, and thus, he was not qualified. We disagree. Gerbasi's declaration stated that "I did not intend to imply that Mr. Phelps took no college courses except in engineering subjects; my intent was to convey the fact that over several years' time, Mr. Phelps had completed approximately two years of an engineering curriculum." Furthermore, the committee had assigned a low priority to the college course qualification