21 F.3d 1119
 2 Wage & Hour Cas.2d (BNA) 992
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kathleen S. WINTHER, for herself and all others similarly
situated, Plaintiff-Appellant,
v.
CITY OF PORTLAND, Defendant-Appellee.
 No. 92-35590.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 5, 1994.
Decided April 6, 1994.
 
 1
 Before: POOLE and TROTT, Circuit Judges, and KING, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Kathleen Winther appeals the dismissal of her Equal Pay Act suit against the City of Portland. Winther, an emergency communications specialist in the Portland Bureau of Emergency Communications (BOEC), attempted to compare her wages to those of fire fighter specialists/communications in the Portland Fire Alarm Dispatch (FAD). The district court granted summary judgment against her for failing to show that the BOEC and FAD are one "establishment" under the EPA. We have jurisdiction over the district court's final judgment pursuant to 28 U.S.C. Sec. 1291. We review de novo the district court's grant of summary judgment, Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992), and we affirm.
 
 
 4
 * The City of Portland contends that the district court erroneously applied an "establishment" test that looked to more than just the physical location of the entities sought to be compared. We find no error in the district court's selection of the proper test.
 
 
 5
 The EPA prohibits discrimination on the basis of sex in the payment of wages. 29 U.S.C. Sec. 206(d)(1). However, its scope is limited to comparisons "within any establishment in which such employees are employed." Id. (emphasis added). The EPA does not itself define the term "establishment." Nor does the Fair Labor Standards Act (FLSA), 29 U.S.C. Sec. 201 et seq., of which the EPA is a part.
 
 
 6
 At the time of the EPA's passage, the Supreme Court had defined "establishment" for FLSA purposes thusly: "Congress used the word 'establishment' as it is normally used in business and government--as meaning a distinct physical place of business...." A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 496 (1945) (footnote omitted); accord Mitchell v. Bekins Van & Storage Co., 352 U.S. 1027 (1957). Subsequent courts have modified the Phillips definition in EPA cases, adding functional considerations, such as the centralization of administration, transfer patterns, and the extent of interaction. See, e.g., Marshall v. Dallas Ind. School Dist., 605 F.2d 191, 194 (5th Cir.1979); Forsberg v. Pacific Northwest Bell Telephone Co., 622 F.Supp. 1150, 1152 (D.Or.1985), aff'd on other grounds, 840 F.2d 1409 (9th Cir.1988); AFSCME v. County of Nassau, 609 F.Supp. 695, 705-06 (E.D.N.Y.1985); Alexander v. University of Michigan-Flint, 509 F.Supp. 627, 629 (E.D.Mich.1980); Gerlach v. Michigan Bell Tel. Co., 448 F.Supp. 1168, 1172 (E.D.Mich.1978).
 
 
 7
 This case is governed by Foster v. Arcata Assocs., Inc., 772 F.2d 1453 (9th Cir.1985), cert. denied, 475 U.S. 1048 (1986), the only Ninth Circuit case to consider the meaning of "establishment" as used in the EPA. Portland argues that Foster adopts the "distinct physical place of business" test of Phillips, while the district court concluded that Foster involved a hybrid functional approach. We agree with the district court.
 
 
 8
 Foster cites to both Phillips and later functional cases. See id. at 1464. It notes, "[w]hen considering the single establishment issue, federal courts have consistently rejected the extension of the statutory establishment requirement to separate offices of an employer that are geographically and operationally distinct." Id. (emphasis added). The analysis Foster does to conclude that the offices at issue are separate establishments considers both physical and functional components. It acknowledges that the offices "were hundreds of miles apart and operationally distinct." Had the Foster court been using a strict "distinct physical place of business" test, it could have stopped with the observation that the offices were separate. Instead, Foster goes on to consider factors such as the independence of the management, the different operational needs, the different functions served, and the existence of separate budgets. Id. at 1465. Based on Foster, then, our analysis must look to the nature of the services provided and the degree of central administration, such as budgeting, hiring, and day-to-day management, as well as the extent of physical separation. See id. We turn to an application of Foster to the facts of this case.
 
 II
 
 9
 Winther contends that the district court erroneously granted summary judgment because she had raised an issue of material fact as to whether BOEC and FAD should be considered one establishment. The district court did not err.
 
 A. Interaction in Performing Services
 
 10
 Winther concedes that employees never transfer between the BOEC and FAD. However, she presented an affidavit to the district court that shows the two agencies do work together in a complementary fashion. Together, the BOEC and FAD dispatch all services needed in response to medical emergency 911 calls. In response, the city has introduced evidence that as to emergencies other than medical ones, the two entities work independently. The city's affidavit indicates that police emergencies are handled exclusively by the BOEC, while fire emergencies are routed to the FAD for exclusive handling. Winther has submitted no evidence regarding interaction during non-medical emergencies. Taken in the light most favorable to plaintiff, this evidence shows that BOEC and FAD serve different functions but sometimes work together to provide their respective services. This evidence does not materially distinguish Winther's case from Foster, in which two offices of a military contractor provided different services to the military. Foster, 772 F.2d at 1465. This provision of complementary services is insufficient to make the BOEC and FAD a single establishment.
 
 B. Physical Connection
 
 11
 Winther next contends that there is a dispute of material fact over whether the BOEC and FAD are physically separate. Winther does not dispute that the BOEC and FAD are located in different buildings an unspecified number of blocks apart, but claims that such physical separation is immaterial in light of phone and computer links between the offices.
 
 
 12
 This argument is misconceived. "Physical separation" as used in Phillips and Foster is a common-sense notion that refers to whether offices are physically contiguous or not. See Phillips, 324 U.S. at 496 ("Congress used the word "establishment" as it is normally used in business and government--as meaning a distinct physical place" (footnote omitted) (emphasis added)); cf. Shultz v. Corning Glass Works, 319 F.Supp. 1161, 1164 (W.D.N.Y.1970) (concluding that three factories constituted one establishment where they "share an office building, are located back to back, and are connected by passageways"), modified on other grounds, 474 F.2d 226 (2d Cir.1973), aff'd, 417 U.S. 188 (1974). The FAD and BOEC are located in noncontiguous buildings, and as a matter of law, such separation is material. See Foster, 772 F.2d at 1464-65. Given this lack of contiguity, the presence or absence of phone lines or modem hookups, at least under existing law, is irrelevant.
 
 C. Joint Administration
 
 13
 Finally, Winther asserts that the BOEC and FAD's joint administration makes them one establishment. But Winther's proffered evidence regarding centralized administration shows centralization at only the most general level. Winther argues that ultimate wage authority rests with the personnel director because she establishes the job classifications that determine salaries, but concedes that wages are set through separate collective bargaining agreements. Winther claims financial interdependence because funding comes from the same ultimate source, the city's discretionary fund, but does not dispute that the BOEC and FAD have separate budgets.
 
 
 14
 Additionally, Portland underlines the fact that each department has independent management; Winther's only response is that the city has promulgated a supervisor's guide and may have expected it to be followed in all disciplinary matters. Portland introduced evidence that the hiring processes are completely separate, involving the independent judgment of those in the department; Winther concedes this, but claims that hires come from the same city-approved list. Portland alleges that training is separate and different; Winther alleges that some training is done by the same person.
 
 
 15
 Finally, Winther notes, without contradiction, that each department is subject to many of the same regulations. But Portland points out, also without contradiction, that there is no centralization of assignments or interchange of personnel between the departments.
 
 
 16
 Considered as a whole in the light most favorable to appellant, these facts do not suffice to raise any issue as to whether the BOEC and FAD are really one establishment under the EPA. As in Foster, the two entities have separate budgets. As in Foster, the entities are run by independent management with independent decisionmaking authority over their staff. As in Foster, the entities serve different functions.
 
 
 17
 At best, Winther's affidavits show that the BOEC and the FAD share some things in common. However, the EPA limits comparisons to individual establishments, not enterprises. The connections Winther points to are of the sort that would be common to a corporation with several branch offices: some ultimate hiring and budgetary control, phone lines between offices, common policies that regulate certain aspects at each branch. But under a functional test like Foster 's, such an arrangement creates several establishments, not one. See Alexander v. University of Michigan-Flint, 509 F.Supp. 627, 628-29 (E.D.Mich.1980); Gerlach v. Michigan Bell Tel. Co., 448 F.Supp. 1168, 1172 (E.D.Mich.1978). Winther's affidavits show centralized control only as to general matters, and do not create an issue of material fact over whether the BOEC and FAD are operationally distinct.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3