Louise L. JENKINS, Appellant,

v.

The HOME INSURANCE COMPANY, Appellee.

No. 79–1852.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 10, 1980.

Decided Dec. 15, 1980.

Robert P. Geary, Richmond, Va. (McGrath & Geary, Richmond, Va., on brief), for appellant.

John F. Gibbons, New York City (Eugene T. D'Ablemont, Paul L. Bressan, Kelley, Drye & Warren, New York City, Robert L. Dolbeare, Richmond, Va., on brief), for appellee.

Before BUTZNER, HALL and MURNAGHAN, Circuit Judges.

PER CURIAM:

Louise L. Jenkins instituted an action against her former employer, The Home Insurance Company (Company), in which she alleged that the Company had violated her rights under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq*, and the Equal Pay Act, 29 U.S.C. § 206(d). After discovery, the district court awarded summary judgment to the Company on the ground that her claims were barred by the statutes of limitation. On appeal, Jenkins contends that the court erroneously applied the rule of *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). We agree and reverse the district court.

Jenkins was hired by the Company as a Claims Representative in September, 1969. On October 8, 1973, she was promoted to Claims Supervisor, the position she held until December 30, 1977, when she retired due to a non–work related illness. The record discloses that in return for the duties she performed, the Company paid Jenkins a salary on a biweekly basis.

Jenkins alleges that during the course of her employment she was consistently paid less than her male counterparts who performed the same work. In her deposition, Jenkins testified that she became aware of this wage discrepancy in January, 1975. In the summer of 1976 she was told by her manager that the discrepancy was due to the low salary the Company paid her when she was initially hired.

Jenkins took no formal action until May 3, 1978, when she filed a claim with the Equal Employment Opportunity Commission. The present lawsuit was filed in the district court on December 28, 1978.

On the Company's motion for summary judgment, the district court ruled that Jenkins had failed to file her claim within 180 days of the last discriminatory violation as required by Title VII, 42 U.S.C. § 2000e–5(e), and within two years of the last violation as mandated by the Equal Pay Act, 29 U.S.C. § 255(a). The court found the discriminatory violation which gave rise to her claim occurred when she was hired at a lower salary, and that her cause of action accrued on that date or, at the latest, upon her discovery of the violation in 1975–76. Applying the rule in *Evans*, the court determined that although Jenkins' initial low salary affected her level of pay throughout the duration of her employment, this differential did not constitute a continuing violation.

*Evans* involved a company policy which prohibited female flight attendants from being married. When Evans married in 1968, she was forced to resign. Thereafter, in November, 1968, United entered into a new collective bargaining agreement which ended the "no–marriage" rule. In 1971, this "no–marriage" policy was judicially declared to be a violation of Title VII. *Sprogis v. United Air Lines*, 444 F.2d 1194 (7th Cir. 1971), *cert. denied*, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971). On February 16, 1972, Evans was rehired by United as a new employee, but her requests for reinstatement of her pre–1972 seniority were denied. Her ensuing lawsuit under Title VII was dismissed by the district court as untimely under the statute of limitations.

The Supreme Court affirmed the dismissal on the ground that United's seniority system did not presently violate Title VII. The crucial element in this determination was Evans' failure to allege that the seniority system treated former female employees who were discharged for discriminatory reasons differently than former employees who resigned or were discharged for non–discriminatory reasons. 431 U.S. at 558, 97

S.Ct. at 1889. Thus, the "no–marriage" rule formed the basis of a violation only once–when Evans was forced to resign in 1968.

Unlike *Evans*, the Company's alleged discriminatory violation occurred in a series of separate but related acts throughout the course of Jenkins' employment. Every two weeks, Jenkins was paid for the prior working period; an amount less than was paid her male counterparts for the same work covering the same period. Thus, the Company's alleged discrimination was manifested in a continuing violation which ceased only at the end of Jenkins' employment.

We view the continuing violation issue to be the same in sex cases as in race cases and we will apply the same rules, regardless of the type of discrimination alleged. In prior decisions, this Court has held that acts of *racial* discrimination first inflicted at the date of hiring can thereafter continually violate the plaintiff's rights. *Williams v. Norfolk & Western Railway Co.*, 530 F.2d 539 (4th Cir. 1975). *See also, Patterson v. American Tobacco Co.*, 586 F.2d 300, 304 (4th Cir. 1978). Because of the similarities involved, these decisions are persuasive in the present context and support our conclusion.

We find that: (1) Jenkins has sufficiently alleged a continuing violation of her rights under Title VII and the Equal Pay Act, and (2) this violation continued until the end of her employment, and (3) her claims were timely filed. The judgment of the district court is reversed and this case is remanded for further proceedings.

*REVERSED AND REMANDED.*