698 F.2d 1003
 30 Fair Empl.Prac.Cas. 1706,
27 Wage & Hour Cas. (BN 652,
31 Empl. Prac. Dec. P 33,349,
12 Fed. R. Evid. Serv. 935
Vicki BARTELT, Plaintiff-Appellant,
v.
BERLITZ SCHOOL OF LANGUAGES OF AMERICA, INC., Defendant-Appellee.
Lydia MELSEN, Plaintiff-Appellant,
v.
BERLITZ SCHOOL OF LANGUAGES OF AMERICA, INC., Defendant-Appellee.
 Nos. 81-4064, 81-4287.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 14, 1982.
Decided Feb. 8, 1983.
 
 Brad Seligman, Farnsworth, Saperstein & Brand, Oakland, Cal., for Bartelt and Melson.
 Lawrence J. Gartner, Littler, Mendelson, Fastiff & Tichy, Los Angeles, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before GOODWIN, FLETCHER, and POOLE, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 Lydia Melsen and Vicki Bartelt brought separate actions against their former employer, Berlitz Schools of Languages of America, Inc. (Berlitz) under Title VII of the Equal Employment Opportunity Act, 42 U.S.C. Sec. 2000e et seq. Both alleged that Berlitz discriminated against them as directors of Berlitz's schools by paying them lower salaries, commissions, and bonuses than either former male directors at their respective schools or male directors currently employed at other Berlitz schools. The district court granted Berlitz's motions for summary judgment. We reverse and remand both actions for further proceedings.
 
 
 2
 * FACTS
 
 
 3
 Berlitz is a New Jersey-based corporation that operates language schools throughout the country. In 1968, Melsen began working for Berlitz in its Oakland school. In 1973, she became assistant director, and in 1975, she replaced Walter Haeussler as acting director. She remained as director of the Oakland school until her termination in 1979.
 
 
 4
 Bartelt was hired by Berlitz as a management trainee in 1973 in the East Detroit school. In 1977, she transferred to the Palo Alto school and replaced Gunther Barth as director. She remained director until her termination in 1979.
 
 
 5
 In 1978, Melsen filed a charge of sex discrimination with the Equal Employment Opportunity Commission (EEOC), charging Berlitz with discriminating against her in the payment of wages based on her sex. Bartelt filed a similar charge with the EEOC in 1979.
 
 
 6
 In 1979, Melsen and Bartelt filed separate suits in district court. Both alleged that Berlitz violated Title VII by paying them less compensation than either their male predecessors or present male directors at other Berlitz schools for performing substantially equal work. At a hearing on Berlitz's motions for summary judgment, the district court ruled that: (1) neither Melsen nor Bartelt had filed a timely complaint with regard to charges that their compensation was less than their male predecessors because neither had filed a complaint with the EEOC within 300 days of their replacement of the former directors; and (2) neither could advance equal pay claims under Title VII based on a comparison with male directors employed in other Berlitz schools. The court granted summary judgment to Berlitz in both actions. Melsen's and Bartelt's appeals were consolidated by order of this court. We note jurisdiction under 28 U.S.C. Sec. 1291 (1976).
 
 II
 DISCUSSION
 A. STANDARD OF REVIEW
 
 7
 Summary judgment is proper only when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56.
 
 B. TIMELINESS
 
 8
 The district court granted summary judgment in part because it found the plaintiffs' claims based on a comparison of their wages with their predecessors' wages time-barred. Section 706(e) of Title VII, 42 U.S.C. Sec. 2000e-5(e), requires that a discrimination charge be timely filed with the EEOC. Where, as here, there is a qualified state compliance agency, that time period is 300 days from the date of the alleged discriminatory act. See Williams v. Owens-Illinois, Inc., 665 F.2d 918, 923 n. 2 (9th Cir.1982).
 
 
 9
 Berlitz argues that because Melsen and Bartelt began working as directors for Berlitz more than three hundred days before they filed a charge with the EEOC, their charges were untimely. We disagree. The policy of paying lower wages to female employees on each payday constitutes a "continuing violation." Jenkins v. Home Insurance Co., 635 F.2d 310 (4th Cir.1980); Satz v. ITT Financial Corp., 619 F.2d 738, 743-44 (8th Cir.1980). See Reed v. Lockheed Aircraft Corp., 613 F.2d 757, 759-61 (9th Cir.1980). We conclude that the claims are timely because each plaintiff filed charges with the EEOC within three hundred days of a payment of allegedly discriminatory wages.[1]
 
 C. THE SINGLE ESTABLISHMENT REQUIREMENT
 
 10
 The district court also granted summary judgment on the ground that, as a matter of law, the data concerning the salaries of male directors at other Berlitz schools would not establish a violation of Title VII because it did not show that the employer discriminated in the payment of wages to employees within a single establishment, a requirement of an Equal Pay Act violation. See 29 U.S.C. Sec. 206(d) (1976).
 
 
 11
 The premise underlying this ground for dismissal is that a sex-based wage discrimination claim may be brought under Title VII only if the evidence supporting the charge would establish a violation of the Equal Pay Act. The Equal Pay Act addresses the problem of discrimination in the payment of wages based on the sex of the employee. It makes it unlawful for employers to pay different wage rates, based on the sex of the employee, to employees in the same establishment who perform equal work. See Corning Glass Works v. Brennan, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).[2] The coverage of Title VII with respect to discrimination on account of sex is much broader. Title VII makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's ... sex ..." 42 U.S.C. Sec. 2000e-2(a). We note that the district court decided this case before the Supreme Court's decision in County of Washington v. Gunther, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981) (Rehnquist, J. dissenting), which addressed the relationship of Title VII to the Equal Pay Act. Gunther rejected the assumption upon which the district court dismissed these actions.
 
 
 12
 In Gunther, the Supreme Court held that plaintiffs, four female prison guards, could bring claims of differential compensation under Title VII even though they could not satisfy the equal work standard of the Equal Pay Act. The Court rejected the argument that the Bennett Amendment to Title VII restricted Title VII's prohibition of sex-based wage discrimination claims to claims of "equal pay for equal work:"[3]
 
 
 13
 In practical terms, [accepting this argument] means that a woman who is discriminatorily underpaid could obtain no relief--no matter how egregious the discrimination might be--unless her employer also employed a man in an equal job in the same establishment, at a higher rate of pay. Thus, if an employer hired a woman for a unique position in the company and then admitted that her salary would have been higher had she been male, the woman would be unable to obtain legal redress under petitioners' interpretation.... Congress surely did not intend the Bennett Amendment to insulate such blatantly discriminatory practices from judicial redress under Title VII.
 
 
 14
 Gunther, 452 U.S. at 178-79, 101 S.Ct. at 2252.
 
 
 15
 Instead, the Gunther Court interpreted the Bennett Amendment as requiring only the incorporation of the four affirmative defenses of the Equal Pay Act into Title VII.[4] Thus, when faced with a sex-based wage discrimination claim brought under Title VII, the employer may successfully defend its action by showing that: (1) the compensation was paid pursuant to a seniority system; or (2) the payments were made pursuant to a merit system; or (3) the compensation was paid pursuant to "a system which measures earnings by quantity or quality of production;" or (4) the payments were based on any other factor other than sex. 29 U.S.C. Sec. 206(d); see Gunther, 452 U.S. at 168-69, 101 S.Ct. at 2247.
 
 
 16
 Berlitz argues that the Supreme Court in Gunther did not specifically address claims based on an "equal pay for equal work" theory. When this theory is the basis for the claim under Title VII, Berlitz argues that the employer's action must constitute an Equal Pay Act violation. Otherwise, the result will be to subvert the scheme of the Equal Pay Act, which Congress carefully designed to handle "equal pay for equal work" problems. The point of Gunther, however, is that Title VII's statutory scheme covers claims of sex-based wage discrimination, whether or not those claims also fall under the Equal Pay Act. Berlitz's view is contrary to the rationale of Gunther and the Supreme Court's pronouncement that courts must "avoid interpretations of Title VII that deprive victims of discrimination of a remedy, without clear congressional mandate." Gunther, 452 U.S. at 178, 101 S.Ct. at 2252.
 
 
 17
 Moreover, contrary to Berlitz's assertions, the failure to read the "single establishment" restriction of the Equal Pay Act into Title VII will not result in numerous legal and practical problems nor will it thwart the sound policies of the Equal Pay Act. An Equal Pay Act challenge differs in important respects from an action brought under Title VII. Title VII contains a comprehensive scheme of administrative remedies that must be exhausted before suit is filed. 42 U.S.C. Sec. 2000e-5. No administrative exhaustion is required under the Equal Pay Act.
 
 
 18
 Furthermore, the different statutes provide different remedies. Although Title VII authorizes a backpay remedy, under the Equal Pay Act, double back pay awards are authorized. Compare 42 U.S.C. Sec. 2000e-5(g) with 29 U.S.C. Sec. 216(b) (Supp. II 1978). The back pay recovery period in many cases will be longer under the Equal Pay Act than under Title VII. Compare 29 U.S.C. Sec. 255 (1976) (employer who commits willful violation is liable for back pay for up to three years before suit is filed) with 42 U.S.C. Sec. 2000e-5(g) (recovery period limited to two years before date charges filed with the EEOC).
 
 
 19
 For these reasons, we reject Berlitz's approach. We agree that a comparison of plaintiffs' salaries with the salaries paid to male directors at other Berlitz schools is not between employees of a "single establishment," and hence that Melsen and Bartelt would not be able to establish a violation of the Equal Pay Act by relying on this data. But plaintiffs have not brought an action under the Equal Pay Act. Title VII does not contain a "single establishment" limitation. See Gunther, 452 U.S. at 171, 101 S.Ct. at 2249. We hold that the evidence of the salaries of male directors at other Berlitz schools, which supports plaintiffs' sex-based wage discrimination claims, may be introduced to support a claim under Title VII even though it would not support an Equal Pay Act claim. It was error for the district court to grant summary judgment to Berlitz.
 
 IV
 CONCLUSION
 
 20
 Plaintiffs' claims based on a comparison of their salaries with their predecessors' are not time-barred. Evidence that Berlitz paid lower wages to plaintiffs than to male directors at other Berlitz Schools may be used to establish a sex-based wage discrimination claim under Title VII.
 
 
 21
 We REVERSE the grant of summary judgment to Berlitz and REMAND the case to the district court for further proceedings consistent with this opinion.
 
 
 22
 POOLE, Circuit Judge, dissenting.
 
 
 23
 I respectfully dissent for the reason that the claims of sex discrimination were untimely and thus the district court was correct in its grant of summary judgment.
 
 
 24
 The appellants claimed sex discrimination in that they were hired to fill jobs vacated by males and that from the outset they were paid less for the same work. But neither filed charges with the Equal Employment Opportunity Commission within the maximum 300 days as required by Section 706 of Title VII, 42 U.S.C. 2000-5(e). Nothing in this record implicates "equitable tolling" or other reason for this delay.
 
 
 25
 Melsen was first employed by Berlitz in 1968. She replaced a male Director at the Oakland school in January, 1975, at a rate of compensation lower than that paid her predecessor. But she did not file charges with EEOC until November 14, 1978, nearly four years later. Bartelt replaced a male as Director at the Palo Alto school in July, 1977. She did not file a charge until April 11, 1979, 21 months later.
 
 
 26
 My difference with the majority is obvious. They have neatly skirted the requirement of filing charges within 300 days by an expedient: they hold that if a member of a protected class is hired at a discriminatory wage, that person presumably may wait for years and years before bringing charges because each pay check tendered by the employer constitutes a "continuing violation" of the original act of discrimination.
 
 
 27
 This holding seems to me quite unsupported by logic or policy or anything in the language of Title VII. It does not square with other cases. The majority has successfully rewritten the statute without waiting for a tardy Congress. This is troublesome. The view adopted today may seem better than the statutory policy but I do not understand such code updating to be our function. Nor does that view seem to comport with what the Supreme Court has stated in United Air Lines v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), where Justice Stevens wrote:
 
 
 28
 * * * A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.
 
 
 29
 Respondent emphasizes the fact that she has alleged a continuing violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present violation exists.
 
 
 30
 431 U.S. 558, 97 S.Ct. 1889.
 
 
 31
 The majority seeks shelter for this rationale by calling two discrete situations cumulatively a "policy." These are two separate cases which were not, when challenged on summary judgment, augmented by appropriate evidence sufficient to justify the terminology of "policy" or "practice" as we know those words. But we need not wrangle over arcane contentions of evidence because it is clear that the majority's position is that each subsequent salary payment as to each single recipient generates another violation (whether styled "new" or "further" or mere continuum). In whatever form it is wrapped, the holding bends the statute to accomplish a result, on the argument that the Supreme Court has not explicitly said that there is no such thing as continuing violation.
 
 
 32
 One cannot well read the majority or dissent in Mohasco Corp. v. Silver, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), without concluding that basic to Title VII is a purpose of requiring claims to be raised while they are temporally and seasonably fresh. Discrimination claims are committed to administrative processing in the first instance so that they may be resolved administratively if possible, on the theory that securing the substance of civil rights is the objective rather than protracted and stale litigation. It may well be that enlargement of the time for filing charges, as the majority now sanctions, will prove a salutary event, should it survive. The problem is that we do not write on a clean slate and ours is not the role of convenient emendation even in support of the most noble of causes.
 
 
 
 [1]
 Berlitz's primary argument is that the limitations period should run from the date the plaintiffs became directors because it was at this time that their allegedly discriminatory wages were set. In the alternative, however, Berlitz argues that the period for filing commenced at the time that the male predecessors left their positions. In advancing this argument, Berlitz makes two assumptions. First, it assumes that in order to state an "equal pay for equal work" claim under Title VII, the plaintiff must allege facts sufficient to establish an Equal Pay Act violation. Second, Berlitz assumes that an Equal Pay Act claim must be based on a comparison between the wage rates of current employees within the establishment. From these premises Berlitz argues that the last day that plaintiffs' predecessors were "employees" was the last day that a Title VII violation existed. According to Berlitz's theory, plaintiffs had three hundred days from that date to file a charge with the EEOC
 We reject Berlitz's alternative argument because it is an irrational distortion of both statutes. This reasoning would lead one to conclude that if the predecessor employee left more than three hundred days before the replacement arrived, the replacement could never file a timely charge with the EEOC. The time would have expired before any violation occurred.
 We further note that under the Equal Pay Act plaintiffs need not rely solely on a discriminatory wage differential between current employees to establish a violation, but may make comparisons to prior employees. See County of Washington v. Gunther, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981) (Rehnquist, J. dissenting) at 179 n. 19, 101 S.Ct. at 2253 n. 19; id. at 201-02, 101 S.Ct. at 2263-64. Thus even if it were necessary for the plaintiffs in this case to meet the criteria of the Equal Pay Act to state a claim under Title VII, a theory we reject, see discussion infra, that requirement has been met here.
 
 
 [2]
 The Equal Pay Act was enacted as an amendment to the Fair Labor Standards Act of 1938, 29 U.S.C. Secs. 201-19. It provides, in relevant part:
 No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.
 29 U.S.C. Sec. 206(d)(1)
 
 
 [3]
 The Bennett Amendment provides:
 It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of Title 29 [the Equal Pay Act].
 42 U.S.C. Sec. 2000e-2(h).
 
 
 [4]
 The court based its conclusion that the Bennett Amendment did not preclude the plaintiffs' Title VII claims on: (1) the language of the Bennett Amendment; (2) the legislative history of the adoption of the Amendment; and (3) the remedial purposes of the Equal Pay Act and Title VII
 Gunther, 452 U.S. at 168-80, 101 S.Ct. at 2247-53.