814 F.2d 655
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Mumtaz Bano KHAN, Appellant,
v.
Jimmy R. JENKINS, John H. Carson, Marion D. Thorpe,
Elizabeth City State University, Appellees.
 No. 85-2252.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 13, 1986.
Decided March 19, 1987.
 
 E.D.N.C.
 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern. W. Earl Britt, District Judge. (C/A 82-39).
 Before ERVIN and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 Oldric J. LaBell, Jr. (Herbert Mullen; Hall, Mullen, Brumsey & Small, on brief), for appellant.
 Thomas J. Ziko, Assistant Attorney General (Lacy H. Thornburg, Attorney General, on brief), for appellees.
 CHAPMAN, Circuit Judge:
 
 
 1
 The district court held that the appellant's claims for relief under Title VII, the Age Discrimination in Employment Act, and Sec. 1981 and Sec. 1983 were time-barred. We reverse and remand in part, finding that some of the alleged violations arose within the statute of limitations time period, and that other violations constituted "continuing violations" so as to extend the period for filing a complaint.
 
 I.
 
 2
 Mumtaz Bano Khan is a United States citizen of Pakistani origin. In August, 1971, she was hired by the appellee, Elizabeth City State University ("ECSU" or the "University") as an instructor in its Business and Economics Department. ECSU, part of the University of North Carolina system, is a state institution. Historically, ECSU was an all-black college and has maintained a significant black majority in its administrative positions, faculty and student body.
 
 
 3
 ECSU had employed Mrs. Khan as an instructor under a series of one-year contracts for a period of seven years beginning in 1971. The last of these one-year contracts covered the 1977-78 academic year. According to the University's tenure policies, appointments to the rank of instructor (an untenured position) are limited to seven years. A faculty member who has held the rank of instructor for seven years must either be promoted, appointed to a "special faculty" (lecturer) position or released from employment. ECSU offered Mrs. Khan an appointment as a lecturer for the 1978-79 academic year, which she accepted. Mrs. Khan filed a charge with the Equal Employment Opportunity Commission ("EEOC") on November 7, 1978, alleging that ECSU had denied her promotion, tenure and equal pay because of her race and gender. The EEOC did not take any immediate action on this first charge.
 
 
 4
 After Mrs. Khan had served as a lecturer for the 197879 academic year, ECSU decided to terminate her employment at the end of the 1979-80 academic year. ECSU notified Mrs. Khan of its intent to terminate her employment by a letter dated July 31, 1979, which letter contained a contract specifying that her appointment for the 1979-80 academic year was terminal. Mrs. Khan protested the decision, but did subsequently sign the contract on August 14, 1979. On May 27, 1980, Mrs. Khan filed a second charge with the EEOC. In this charge, Mrs. Khan claimed that the University had, because of her race and gender, demoted her, denied her tenure, terminated her employment and failed to pay her a salary equal to that paid similarly situated faculty members. The EEOC issued Mrs. Khan a right to sue letter on her first EEOC charge on August 28, 1981. Mrs. Khan failed to file any action based on that right to sue letter. On September 30, 1982, the EEOC issued Mrs. Khan a right to sue letter on her second EEOC charge.
 
 
 5
 On January 14, 1983, Mrs. Khan served the University with a pro se complaint alleging violations of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e, et seq. She alleged that ECSU had discriminated against her when it denied her tenure, failed to promote her, terminated her employment and paid her an unequal salary. The University moved for summary judgment on all of the plaintiff's claims upon the ground she had failed to file a charge with the EEOC within one hundred eighty (180) days of any discriminatory act or practice alleged in the complaint.
 
 
 6
 On January 9, 1984, a magistrate recommended that all of the plaintiff's claims arising under Title VII be dismissed. The magistrate based his determination on the fact that Mrs. Khan had failed to file a complaint within ninety (90) days of September 15, 1981, the date on which she had received her right to sue notice on the first EEOC charge. The magistrate also determined that Mrs. Khan could not proceed under her second EEOC charge because she had failed to file the EEOC charge within one hundred eighty (180) days of the alleged discriminatory acts. The magistrate found that the discriminatory acts occurred no later than August 2, 1979, when ECSU notified Mrs. Khan that she would receive a one-year terminal contract as a lecturer for the 197980 academic year. Regarding the appellant's Title VII claim for denial of equal pay, the magistrate determined that, although denial of equal pay is considered a continuing violation under Title VII, see Jenkins v. Home Insurance Co., 635 F.2d 310 (4th Cir. 1980), the appellant could not proceed on that claim because the claim was originally raised in her November 1978 EEOC charge (the first charge) and she had failed to file a complaint within ninety days of receiving her right to sue notice on that charge. The district court adopted the findings of the magistrate, and dismissed Mrs. Khan's Title VII claims.
 
 
 7
 0n January 25, 1984, the appellant filed an amendment to her complaint. In addition to the Title VII claims, the appellant alleged claims for relief under 42 U.S.C. Sec. 1981 and Sec. 1983, and under the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621, et seq.
 
 
 8
 On June 26, 1984, the district court held that the plaintiff's claim for relief under Sec. 1981 and Sec. 1983 were governed by a three-year statute of limitations. The court found that all of the plaintiff's claims for relief accrued on August 14, 1979, when the plaintiff signed her final contract with ECSU. Thus, the plaintiff's original complaint dated December 20, 1982 was filed beyond the three-year period and was barred. As to the ADEA claim, the court held that the plaintiff had failed to prove that she had exhausted her administrative remedies.
 
 
 9
 Mrs. Khan has appealed the dismissal of her Title VII claims, her ADEA claim, and her claims arising under 42 U.S.C. Secs. 1981 and 1983. She asserts that the district court erred in finding that the statute of limitations and filing deadlines for the various causes of action began to run in August of 1979, when ECSU notified Mrs. Khan that she would receive a one-year terminal contract as a lecturer at a specific salary for the 1979-80 academic year. Mrs. Khan alleges that later acts of discrimination occurred, which stand as either a "continuing violation," or as an independent, later instance of discrimination entitling her to relief. Specifically, the appellant has alleged that she suffered from unequal pay (a continuing violation), and unequal work assignments.
 
 II.
 
 10
 To file an action under Title VII, the aggrieved party must first comply with administrative filing requirements. After the alleged discriminatory events have occurred, the aggrieved party has one hundred and eighty (180) days in which to file a claim with the EEOC. When and if the EEOC issues the aggrieved a "right to sue" letter, the party has ninety (90) days thereafter in which to file a claim. Failure to meet these filing deadlines renders the discriminatory occurrence "merely an unfortunate event in history which has no present legal consequences," United Airlines, Inc. v. Evans, 431 U.S. 553, 558 (1976).
 
 
 11
 Like statutes of limitations, statutory filing deadlines heighten the importance of the determination of when the allegedly violative conduct occurred. In Delaware State College v. Ricks, 449 U.S. 250 (1980), the plaintiff had alleged that the denial of tenure at a state college deprived him of his rights under Title VII and under 42 U.S.C. Sec. 1981. The Supreme Court held that the applicable limitations period began to run when the plaintiff received notice of his denial of tenure, and not on the date that his employment actually terminated. "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." Id. at 257. Thus, the filing limitations period commenced at the time the tenure decision was made and communicated to the aggrieved by letter. The court reasoned that "the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful," id. (emphasis in original). The Ricks opinion does recite the long-standing exception to the rule that the filing period is commenced by the occurrence of the alleged discriminatory act: the exception being for "continuing violations," which serve to delay the commencement of the filing period until the date of the most recent occurrence of the discriminatory practice. See, e.g., United Airlines, Inc. v. Evans, 431 U.S. 553 (1976); Havens Realty Corp. v. Coleman, 455 U.S. 363 (1981).
 
 
 12
 It is clear that Ricks controls the appellant's claims that she was discriminatorily denied promotion and tenure, and terminated. Ricks teaches that the legally significant discriminatory act occurred when the appellant received notice by letter of ECSU's decision to terminate her employment. The actual termination of the appellant, which occurred one year later, is merely the time at which the consequences of the alleged discriminatory act became most painful. Thus, the appellant's failure to raise her discrimination claim regarding the University's tenure decision within one hundred eighty (180) days after her receipt of the letter informing her that her position was terminal serves to bar her bringing these claims now.
 
 
 13
 The appellant has argued that her case differs from Ricks in that the University's denial of tenure constitutes a "continuing violation." In support of her argument, the appellant refers to various salary and workload inequalities which were allegedly arose out of a discriminatory animus. This argument, however, misconstrues Ricks. Although Ricks held that its rule would not apply where the denial of tenure constituted a continuing violation, a continuing violation can be shown only by allegations detailing the same type of discriminatory action or violation. As the Supreme Court stated in Ricks, "[i]n order for the limitations period to commence with the date of discharge, Ricks would have had to allege and prove that the manner in which his employment was terminated differed discriminatorily from the manner in which the College terminated other professors who had also been denied tenure." Ricks at 258. Thus, the appellant in this case would have had to allege some acts of discrimination as to the termination itself in order to extend the life of her denial of tenure claim.
 
 
 14
 Any discrimination as to differences in work assignments or in salary can serve as grounds for bringing a Title VII action in and of themselves, but these claims of continuing discrimination will not allow the appellant to revive and seek damages for her denial of tenure. We thus hold that, in the absence of any later acts of discrimination regarding her termination of employment, the appellant's Title VII claims for denial of tenure and termination are barred by the appellant's failure to file a claim within the statutory deadline.[1]
 
 III.
 
 15
 Although the denial of tenure claim is time-barred, we find the appellant's claims alleging unequal pay and unequal work assignments were filed within the statutory deadlines. The district court erred in refusing to permit the appellant to file a claim based on the second right to sue letter issued by the EEOC. This court has held that the denial of equal pay is a violation which is "continuing," in that it arises with the receipt of each "unequal" paycheck. Jenkins v. Home Insurance Company, 635 F.2d 310 (4th Cir. 1980). The theory underlying Jenkins is that, unlike a decision to deny tenure, which is a single, isolated decision, equal pay is denied each time the employer chooses to pay his employee a reduced amount due to discriminatory motivations. Thus, like other repeated acts of discrimination, violation of the prohibition against discriminatory unequal pay occurs with each paycheck. As a result, the last legally significant instance of alleged discrimination under the unequal pay theory occurred upon the University's final salary payment to Mrs. Khan, in June of 1980.
 
 
 16
 The district court held that the receipt by Mrs. Khan of her right to sue notice on her first charge shortly after her termination provided the appellant with her sole opportunity to bring suit. The court ruled that the right to sue notice received pursuant to Mrs. Khan's second EEOC charge, which had been filed about the time of her termination, was without effect. It is true that, where the EEOC issues a second right to sue letter concerning alleged discriminatory practices already covered by a prior right to sue letter, the second letter is without effect. See Brown v. Mead Corporation, 646 F.2d 1163 (6th Cir. 1981); Cleveland v. Douglas Aircraft Company, 509 F.2d 1027 (9th Cir. 1975). This case, however, involves a continuing violation, wherein each separate occurrence of the alleged discriminatory practice provides grounds for recovery, having the effect of extending the period during which the aggrieved may bring suit. We hold that, where the EEOC has issued a second right to sue letter pursuant to a second charge of discrimination arising from a continuing violation of Title VII, the claimant has the right to proceed on the second letter, despite her failure to file a complaint on her first right to sue notice.
 
 IV.
 
 17
 The district court also erred in finding that the appellant's claim that she was required to undertake unequal work assignments was barred by her failure to file a complaint within the relevant time limitation arising after August 2, 1979, the date she received notice that she would be terminated at the end of the 1979-80 academic year. The alleged inequality in work assignments did not occur until the second semester of Mrs. Khan's terminal year with the University, and she claims she could not have received "notice" of disparity in work assignments in August, 1979, some six months before they began. We hold that a claim of discrimination in work assignments arises when the inequality occurs. In the present case if the unequal work assignment was made at the beginning of the second semester, or earlier, the assignment and the discrimination would be fixed at the time it was made. However, if the unequal work assignments were made on a weekly or daily basis, the discrimination would be continuing until the date of the last unequal work assignment. We remand to the district court to determine whether the appellant's claim concerning discrimination in work assignments was timely.
 
 
 18
 We find that the district court was correct in dismissing the appellant's ADEA claim on the grounds that the appellant had failed to file a charge alleging a violation of her rights with the EEOC within one hundred eighty (180) days of the discriminatory act. Specifically, the district court found that the plaintiff, in a letter mailed to the EEOC dated February 25, 1983, failed to indicate sufficiently that she was making a claim under the ADEA. We find no reason to disturb this finding.
 
 
 19
 We thus affirm the district court's dismissal of the appellant's Title VII claim and 42 U.S.C. 1981 and 1983 claims as they relate to denial of tenure, denial of promotion, and discriminatory termination. We also affirm the district court in its dismissal of the appellant's ADEA claim. We reverse the district court, however, on its determination that the appellant's claim of unequal pay was barred by her failure to sue on the first right to sue letter. We reverse also the district court's finding that the appellant's unequal work assignment claim arose as of August 2, 1979. We remand this case to the district court to determine when that claim arose, pursuant to this opinion. The appellant will then be entitled to proceed to the merits on any timely claim.
 
 
 20
 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 
 
 
 [1]
 Apparently recognizing that her denial of tenure and discriminatory termination claims can constitute "continuing violations" only if there exists some act of discrimination subsequent to her receipt of the letter from the University, which act of discrimination, like that mentioned in Ricks, in some way relates to the actual termination of employment, the appellant has argued that her termination itself was conducted in a discriminatory manner. We find this argument without merit and inadequately supported by the facts alleged