**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KAANDRA C. MCCORKLE,
Plaintiff-Appellant,

v.                                                      No. 97-1288

VEDA, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-96-1063-A)

Argued: March 5, 1998

Decided: July 2, 1998

Before MICHAEL and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished opinion. Senior Judge Phillips wrote the
opinion, in which Judge Michael and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Jonathan Christian Dailey, DAILEY & KORTELING,
L.L.C., Washington, D.C., for Appellant. J. Jonathan Schraub,
SCHRAUB & COMPANY, CHARTERED, Alexandria, Virginia, for
Appellee. **ON BRIEF:** Paige A. Levy, SCHRAUB & COMPANY,
CHARTERED, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

In this employment discrimination case, plaintiff Kaandra C. McCorkle, an African-American female, appeals from the judgment entered below, challenging an order of the district court granting defendant Veda Incorporated's ("Veda") motion for summary judgment. We affirm.

I.

Veda is engaged in the business of contracting with commercial and federal agencies to provide professional services and management of military defense assets. On March 5, 1990, Michael Charters, a Veda executive, hired McCorkle, over at least one white male applicant, to work at Veda on logistical support duties respecting one of its government contracts.

In September 1990, Charters completed McCorkle's first performance evaluation, giving her an overall rating of 3.0.[1] In her second review, dated March 1991, Charters gave McCorkle an overall rating of 3.4.

In late 1991, Charters reassigned McCorkle to different "contract reconciliation" duties than those she had been performing. McCorkle's old office and duties were assigned to Bob Lindley, a white male McCorkle had competed against for her initial position. McCorkle's pay and other financial benefits were not affected.

On September 26, 1994, McCorkle sent a letter to Veda's Bill

_____

[1] There are five categories in Veda's rating scale: 1 (unsatisfactory); 2 (needs improvement); 3 (performs satisfactorily); 4 (exceeds performance expectations); and 5 (sets the highest standards).

Deihm complaining that for the last three years, Charters had racially and sexually discriminated against her. According to Veda, after receiving McCorkle's complaints and those from other female Veda employees, Charters was demoted, removed from the bonus program, issued a letter of reprimand, asked to apologize to the women, required to attend training, and warned that if Veda received any "further allegations of inappropriate behavior . . . which can be substantiated," he would be terminated. (J.A. 423.) McCorkle contends that Charters was never actually demoted.

From 1994 to February, 1996, McCorkle made no further complaints about Charters. Then, on February 5, 1996, McCorkle met with Pat Ryan and complained that Charters was "continuing with his treatment towards [her]" and that he was"a racist." (Id. at 501.)

At the end of February 1996, Charters prepared McCorkle's performance review for the March 1995 to February 1996 period, giving her an overall rating of 3.4. McCorkle attached comments to the review, challenging Charters's ratings in various categories.

McCorkle's complaints prompted Veda to hire outside legal counsel to investigate Charters. The investigation concluded that Charters did not discriminate against McCorkle. However, because of "personality conflicts" between the two employees, Veda offered to transfer McCorkle to a group headed by Norman Cratsenberg. McCorkle accepted.

On March 4, 1996, McCorkle filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination; on March 13, 1996, she received a right to sue letter. On June 11, 1996, McCorkle and three other female Veda employees sued Veda for employment discrimination. McCorkle alleged that by reassigning her to reconciliation duties in 1991, Veda had discriminated against her on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Virginia Human Rights Act, Va. Code. Ann. § 2.1-714 et seq., and 42 U.S.C. § 1981. On June 20, 1996, McCorkle tendered her resignation from Veda, effective June 28, 1996. In due course, Veda moved for summary judgment on McCorkle's claims and the district court granted Veda's motion on the grounds that they were time-barred. McCorkle appeals, challeng-

3

ing only the district court's dismissal of her Title VII and § 1981 claims.

II.

This court reviews de novo the district court's summary judgment ruling. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

A.

McCorkle alleges that her 1991 "demotion" was motivated by race and gender in violation of Title VII. Title VII requires that plaintiffs file complaints with the EEOC within 180 days of the discriminatory action, or within 300 days if state or local proceedings are instituted. See 42 U.S.C. § 2000e-5(e)(1). Here, no state or local proceedings were initiated and McCorkle did not file her EEOC complaint until March 4, 1996, well over 180 days after the alleged demotion occurred.

Notwithstanding her failure to timely file an EEOC charge, McCorkle contends that her Title VII claim is saved from time bar by application of the continuing violation theory. The continuing violation theory operates to save untimely claims that "can be related to a timely incident as a `series of separate but related acts' amounting to a continuing violation." Beall v. Abbott Labs., 130 F.3d 614, 620 (4th Cir. 1997) (quoting Jenkins v. Home Ins. Co., 635 F.2d 310, 312 (4th Cir. 1980) (per curiam)). As we have noted, however, an allegation of a continuing violation is not a "talismanic or shibboleth term automatically relieving a claimant of any obligation to comply with the statutory time requirement for filing a charge with the EEOC under Title VII." Hill v. AT & T Techs., Inc., 731 F.2d 175, 179-80 (4th Cir. 1984). As a threshold matter, the theory will not apply unless there is a present violation within the 180-day time period. See Woodard v. Lehman, 717 F.2d 909, 915 (4th Cir. 1983) ("It is only where an actual violation has occurred within that requisite time period that under any possible circumstances the theory of continuing violation is sustainable.") (emphasis in original).

4

Since McCorkle's EEOC complaint was not filed until March 4, 1996, her Title VII claim is saved from time bar only if there was a later, sufficiently related violation that occurred on or after September 6, 1995. McCorkle asserts as the requisite later violations the various incidents that she identified in her comments attached to her 1996 performance review. These, she says "set[ ] forth how Charters continued his adverse actions . . . well past September 6, 1995." (Appellant's Br. at 20.) In the comments attached to her 1996 review, McCorkle challenged the "performs satisfactorily" ratings Charters gave her in various categories. In the area of "Project Execution - Task Planning," McCorkle argued that the rating was inappropriate because she was "prohibited from participating in any of the rating areas set for this criteria" and that her input was rejected. (J.A. 722.) McCorkle also challenged her rating for "Project Execution - Task Execution," complaining that Charters held up her work and gave her no feedback and that her assignments were "far and few between." (Id.) McCorkle argued that her "Project Execution - Coordination/ Cooperation" rating was unfair because Charters excluded her from conversations with the other group members, gave her no direction, and failed to inform her of group goals. (Id. ) McCorkle challenged her "Project Evaluation - Staff Support" rating, complaining that she was "prohibited from sharing [her] knowledge with anyone," and that her input was "overlooked." (Id. at 723.) Finally, McCorkle challenged her ratings in the "Program Development" categories of "Marketing Target Identification" and "Marketing Support," complaining they were unjustified because she was "prohibited from making any outside contact." (Id.)

In addition to offering the incidents described in her comments to her 1996 review as later related violations triggering the continuing violation theory, McCorkle offers the incidents complained of during her February 5, 1996 meeting with Ryan. Specifically, McCorkle notes that at the meeting she complained that Charters "continued to refuse to share reconciliation information with her," "refused to allow her to go to [the government contract customer] to learn the most recent changes to reconciliation procedures and guidelines," that "the demotion and change in office had affected her ability to work effectively within the group," and that her 2% merit increase in 1995 was "well below" the increases she received prior to her reassignment to reconciliation. (Appellant's Br. at 13, 21.)

5

Aside from the merit increase, neither McCorkle's comments to her 1996 review nor the complaints allegedly made at the February 5, 1996 meeting describe any adverse employment actions. As this court has stated, "[i]n no case in this circuit have we found an adverse employment action . . . without evidence that the terms, conditions, or benefits of [plaintiff's] employment were adversely affected." Munday v. Waste Management Of N. Am., Inc., 126 F.3d 239, 243 (4th Cir. 1997), cert. denied, 118 S. Ct. 1053 (1998). Other than the merit increase, none of the incidents complained of affected the terms, conditions or benefits of McCorkle's employment. As for the merit increase, assuming it was given on or after September 6, 1995, there is no evidence that this action was in any way related to the 1991 "demotion."

McCorkle also argues that she experienced "continued acts by Charters in the form of his refusal to communicate with her, his favor of white men in terms of training, overtime, and access to [the government contract customer], and his constant sexist and racist statements to her." (Appellant's Br. at 20.) McCorkle cites no evidence in the record substantiating these charges. We note that McCorkle's September 26, 1994 letter to Deihm alleged that Charters engaged in this behavior. Because of the date of the letter, however, the alleged incidents could not have occurred after September 6, 1995. We need not, therefore, address whether these actions constitute adverse employment actions or whether they were related to the 1991 "demotion."

Finally, relying on Jenkins, 635 F.2d 310, McCorkle argues that Veda's "refusal to restore [her] to her management position" is a "manifestation of continued discrimination." (Appellant's Br. at 23.) In Jenkins, plaintiff sued her former employer, The Home Insurance Company, alleging violations of Title VII and the Equal Pay Act. Plaintiff, who was hired by Home in September, 1969, alleged that Home paid her less than her male counterparts who performed the same work and that she became aware of the wage discrepancy in 1975. In the summer of 1976, plaintiff's manager told her that the discrepancy was due to her low starting salary. In May, 1978, plaintiff filed an EEOC action. In December, 1978, she filed suit in federal court. The district court granted defendant's motion for summary judgment, concluding that plaintiff's claims were time barred because the violations giving rise to them occurred when she was hired at the

6

lower salary and accrued on that date or, at the latest, upon her discovery of the violations. This court reversed, stating:

> [Home's] alleged discriminatory violation occurred in a series of separate but related acts throughout the course of [plaintiff's] employment. Every two weeks, Jenkins was paid for the prior working period; an amount less than was paid her male counterparts for the same work covering the same period. Thus, [Home's] alleged discrimination was manifested in a continuing violation which ceased only at the end of [plaintiff's] employment.

Id. at 312.

In Jenkins, this court found a continuing violation in plaintiff's continued receipt of diminished paychecks. This case differs from Jenkins because here when McCorkle was moved into contract reconciliation duties, her salary was not reduced; rather, it remained unchanged at $46,932.00. (J.A. 139.) Thus, Jenkins does not control.

Because McCorkle has presented no evidence of a Title VII violation continuing into the timely charge period, the district court did not err in dismissing her Title VII "demotion" claim as time-barred.

B.

McCorkle's § 1981 claim is controlled by a two-year statute of limitations borrowed from Va. Code Ann. § 8.01-243(A). The instant lawsuit was filed on June 11, 1996. Thus, any claim arising before June 11, 1994 is time barred. Relying on the same arguments made with regard to her Title VII claim, McCorkle contends that her § 1981 demotion claim is saved by the continuing violation theory. For the reason discussed above, this argument cannot succeed.[2]

_____

[2] We reject any suggestion made in McCorkle's brief that her case includes a claim for constructive discharge. Neither McCorkle's EEOC charge nor her complaint allege constructive discharge. Nor could they as both were filed before she resigned from Veda.

7

III.

Because we find that McCorkle's Title VII and § 1981 demotion claims are not saved from time bar by the continuing violation theory, the judgment of the district court is

AFFIRMED.

8