944 F.2d 908
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Om Parkash KALRA, Plaintiff-Appellant,
v.
SECRETARY, UNITED STATES DEPARTMENT OF INTERIOR, Defendant-Appellee.
 No. 89-15477.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 15, 1991.
Decided Sept. 26, 1991.
 
 1
 Before CHAMBERS and SNEED, Circuit Judges, and KELLEHER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 The Plaintiff/Appellant, Om Parkash Kalra (appellant), is a U.S. citizen of Indian national origin. At all times relevant to this action, appellant has been over 40 years of age. On December 23, 1985, appellant was notified of an opening for a research structural engineer at the Earthquake Office of the U.S. Geological Survey in Menlo Park, California. Appellant timely returned an Availability Statement indicating he was available for the job. About a month later, appellant received a letter from appellee, U.S. Department of the Interior, informing him that he did not get the position. A February 28, 1986 letter from the appellee informed appellant that Erdal Safak, Ph.D., had been selected. At the time, Safak was not a U.S. citizen and was under 40 years of age.
 
 
 4
 Civil Service restrictions required the Earthquake Office to hire even a minimally qualified citizen before it hired a noncitizen. Appellant contends that he was wrongfully removed from the list of qualified applicants so that the office could offer the position to Safak. He claims he was removed because of his age and Indian national origin.
 
 
 5
 Appellant filed this action in the U.S. District Court in the Northern District of California on July 23, 1987, alleging that defendant intentionally discriminated against him on the basis of age and/or national origin in denying him a job. Appellant filed the action pursuant to Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. The case was tried on the merits to U.S. Magistrate Wayne Brazil, who entered judgment for the defendant. This appeal followed. We now affirm judgment for the defendant.
 
 I. FACTS
 
 6
 Appellant was born in 1938 in a part of British India which is now Pakistan. He was educated in India and considers himself to be of Indian nationality. While in India, he obtained bachelor's and master's degrees in mathematics and statistics, and a bachelor's degree in engineering. He worked for the Central Power and Water Commission in New Delhi for 10 years as a water resources engineering assistant and an engineer.
 
 
 7
 Appellant immigrated to the United States in 1971 and became a naturalized United States citizen in 1983. Since moving to this country, appellant has obtained a master's degree in civil engineering and a California professional license in civil engineering. Appellant has worked with several different engineering firms.
 
 
 8
 In November of 1983, appellant submitted an application to the Office of Personnel Management (OPM) for placement in the federal register of applicants for various engineering positions. His application indicates he was seeking employment as a civil or environmental engineer. OPM processed appellant's application according to OPM standard procedure: an OPM staffing specialist determined appellant's qualifications in order to match him with any federal job openings.[1]
 
 
 9
 In November of 1983, the U.S. Geological Survey (Geological Survey) issued a vacancy announcement for a temporary (eleven month) position as a Research Structural Engineer, GS-13, in the Office of Earthquakes, Volcanoes and Engineering (Survey Office). According to the announcement, applicants were required to have successfully completed a full four year engineering curriculum leading to a bachelor's or higher degree in engineering in an accredited college/university, and three years of professional engineering experience. Applicants were also required to possess specialized knowledge, skills, and abilities and other characteristics essential to the job, namely, the ability to develop analytical techniques for analyzing strong-motion records from instrumented structures, and knowledge of engineering and/or structural dynamics related to earthquakes.
 
 
 10
 The vacant position was under the direct authority of Mehmet Celebi, Ph.D., a person of Turkish national origin. Celebi was the only one in the office doing work related to the job opening.
 
 
 11
 In January of 1984, the Geological Survey requested OPM's permission to hire Erdal Safak, Ph.D., who had applied for the position directly to the Geological Survey.[2] Safak was born in 1952 in Bolu, Turkey. He is a Turkish national, but became a naturalized United States citizen in January, 1988. Safak and Celebi had worked together in the past and were friends. There was no evidence at trial that Celebi recruited Safak or asserted undue influence on Safak's behalf.
 
 
 12
 When Safak's eleven month term in the position was coming to a close, the Geological Survey requested and received from OPM a one-year extension on Safak's appointment.[3]
 
 
 13
 In 1985, the Survey Office's chief, Thomas C. Hanks, Ph.D., decided to change the research structural engineer position from a temporary to a permanent one. In order to carry out the change, the Survey Office was required to reopen the application process. Federal law requires federal agencies to give absolute priority to qualified applicants who are United States citizens over non-citizen applicants. If no qualified United States citizen applied for the job, the Survey Office could continue to employ Safak if it received OPM certification to hire a foreign national.
 
 
 14
 Consequently, the Survey Office announced the vacancy and requested that OPM provide a list of eligible citizens. The announcement described the position and its requirements in the same way it described these items when it was a temporary position.
 
 
 15
 OPM certified that three persons, including appellant, were minimally qualified, and therefore eligible, for consideration. An OPM staffing specialist trainee, John Busteed, had reviewed appellant's application and determined he should be certified eligible. Busteed had been with OPM for a couple of months and had no related prior work experience.
 
 
 16
 Because appellant was the only eligible candidate that responded to OPM's inquiries, appellant's application was the only one forwarded to the Survey Office. Hanks considered appellant's application and concluded that appellant's education, experience and professional activities did not qualify him for the position.[4] Hanks determined that appellant completely lacked the earthquake engineering expertise which the Survey Office needed. Hanks testified that neither age nor national origin factored into Hanks' decision to hire Safak over appellant. Hanks simply believed appellant was unqualified based upon appellant's application, and concluded that the position should be offered to Safak. He did not reveal this conclusion to other Survey staff members while seeking input from them.
 
 
 17
 The Survey Office's usual hiring practice was to have an advisory group of three or more Survey professionals (engineers or scientists) review the applicant's qualifications. Despite this practice, only Celebi was asked to review appellant's application and make a recommendation based upon it. Hanks deviated from usual hiring practice because Celebi was the only one in the office who was doing work related to the job opening, and Hanks felt that the decision regarding appellant's application was an easy one which did not require the involvement of a larger group. Hanks did not reveal his own conclusions regarding appellant's application to Celebi because he wanted Celebi's independent decision.
 
 
 18
 Based upon appellant's application, Celebi concluded that appellant was unqualified and that the position should be offered to Safak.
 
 
 19
 With Celebi's help, Hanks prepared a memorandum to OPM to justify removing appellant's name from OPM's certificate of eligibles and to support the hiring of Safak, a foreign national. The district court found that the memo contained false and misleading information. For example, Hanks wrote that the position required applicants to have expertise and training at the Ph.D. level. In truth, the position did not require a Ph.D.[5]
 
 
 20
 John Davidson, Chief of the Science and Engineering Examining Office at OPM, reviewed the memo and corrected this "error." However, Davidson agreed that appellant should be removed from the Certificate of Eligibles for the job despite the error. Davidson concluded that "competitor O.P. Kalra lacks sufficient quals [sic] to meet selective placement factors." Davidson expressly noted that the Survey Office's reference to appellant's failure to qualify because of his lack of a Ph.D. was not the basis for his decision. Davidson agreed that appellant did not meet the requirements of the position as it was advertised.[6] Davidson testified that neither age nor national origin affected Davidson's decision.
 
 
 21
 Based on Davidson's conclusion that appellant was not qualified and on the Survey Office's recommendation of Safak, OPM authorized the Survey Office to hire Safak. Hanks nominated Safak for the position and forwarded the nomination to the Geological Survey's Western Region staffing panel. The panel is a group of senior scientists from the Survey's western region. The members review nominees' applications and references and then certify or reject the nominations. The six member staffing panel that reviewed Safak's application gave him the top ranking.
 
 
 22
 After the staffing panel's certification of Safak's qualification for the job, the Survey Office extended permanent employment to Safak. Significantly, the three men with input into the hiring decision were all over forty years old.
 
 
 23
 Appellant brought this action in federal district court pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000-e, et seq.) and the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621, et seq.), alleging that appellee intentionally discriminated against him on the basis of age and/or national origin in denying him a specific job.
 
 II. DISCUSSION
 A. Standard of Review
 
 24
 The findings of fact of the trial court are presumptively correct and are not to be set aside unless clearly erroneous. Glens Falls Indemnity Co. v. U.S., 229 F.2d 370, 373 (9th Cir.1955).
 
 B. Title VII and the ADEA
 
 25
 Courts apply the same standard in adjudicating claims of discrimination under both Title VII and the ADEA. Foster v. Arcata Associates, Inc., 772 F.2d 1453, 1458 (9th Cir.1985), cert. denied, 475 U.S. 1048 (1986). The plaintiff must prove intentional discriminatory conduct by defendant in order to obtain relief. Id.
 
 
 26
 The order of proof and allocation of burdens for Title VII cases was set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff must prove a prima facie case of discrimination by a preponderance of the evidence.[7] If the plaintiff succeeds, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment decision. Should the defendant carry this burden, the plaintiff must then negate the defendant's excuse by showing that the proferred reason is a pretext for discrimination. Ultimately it is the burden of the plaintiff to persuade the court that he has been a victim of intentional discrimination. McDonnell Douglas, 411 U.S. at 802-04; Foster, 772 F.2d at 1458-59.
 
 1. Appellant's qualification for the job
 
 27
 Since appellee was prohibited by law from hiring a noncitizen if even a minimally qualified citizen was available for the position, a key issue on appeal is whether the appellant was qualified for the job. Appellant argued that he was qualified, and that appellee went out of its way to "disqualify" him in order to be able to hire Safak, a noncitizen.
 
 
 28
 Both parties agreed that appellant met the educational and professional experience requirements for the job. However, in making out his prima facie case of discrimination and in trying to show pretext and discriminatory animus, appellant failed to demonstrate that he possessed the specialized knowledge, skills, abilities and other characteristics described in the job announcement as "essential" to the job, e.g. the ability to develop analytical techniques for analyzing strong-motion records from instrumented structures, and knowledge of engineering and/or structural dynamics related to earthquakes. Appellant's application and resume demonstrated to those who reviewed it that appellant had construction experience, but no research or earthquake experience. Moreover, appellant presented nothing at trial which indicated that he was qualified to design and conduct sophisticated earthquake engineering research.
 
 
 29
 Appellee, however, presented evidence that Hanks, the head of the Seismic and Engineering Branch; Celebi, the supervisor for the vacant position; and Davidson, the Chief of the Science and Engineering Examining Office of the OPM, each independently concluded that appellant was not qualified for the position. Hanks testified that he based his conclusion on his general knowledge of the engineering field and appellant's lack of any scholarly publications. Celebi's unrebutted testimony was that he was familiar with appellant's listed work experience and concluded that appellant was experienced in run of the mill "cookbook engineering" which required no research capability. Davidson had never met the other witnesses and testified as an expert on the examination of applications and job announcements.
 
 
 30
 Appellant has clearly failed to show that the Magistrate erroneously concluded that appellant was unqualified for the job.
 
 
 31
 Our conclusion is unaffected by the fact that Hanks erroneously thought that the job required a Ph.D., because Hanks' ultimate conclusion is supported by other deficiencies in appellant's resume and application. Significantly, Davidson, who disagreed with Hanks regarding the Ph.D. requirement, agreed with Hanks that appellant was unqualified and agreed to change the Certificate of Eligibles to delete appellant's name.
 
 
 32
 Appellant places great weight on the fact that OPM initially placed appellant on the Certificate of Eligibles. Appellee, however, in meeting its "second-stage" burden to articulate a legitimate, non-discriminatory reason for its action, presented evidence that the initial OPM determination was a mistake committed by Busteed, a relatively inexperienced staffing specialist trainee. Davidson testified that Busteed must have mistakenly overlooked the two "selective placement factors" at the bottom of the vacancy announcement. Davidson also testified that, based on his twenty years of staffing experience in the Science and Engineering Office at OPM and a comparison between the job requirements and appellant's application, a correct initial determination would have labeled appellant "not qualified."
 
 
 33
 The Magistrate's finding that OPM had no basis to ascertain whether appellant had the necessary "selective placement factors which are those knowledges, skills, abilities, and other characteristics" identified as essential for successful performance in the position,[8] is further supported by the fact that appellant had not supplied any information to OPM which indicated that he possessed the requisite knowledges, skills, abilities and other characteristics for the job.[9]
 
 
 34
 At trial, appellant presented no evidence that he had experience developing analytical techniques for analyzing strong-motion records from instrumented structures, or any knowledge of engineering and/or structural dynamics related to earthquakes. The Magistrate concluded that Busteed's determination was unsupported by appellant's application and by facts presented at trial. The appellant has not presented this court with any reasons why the Magistrate's conclusion in this regard was erroneous.
 
 2. Timeliness of appellant's action
 
 35
 The United States Department of the Interior rejected appellant's claim pursuant to 29 C.F.R. § 1613.215, finding that the complaint was unduly late[10] and that the record did not indicate facts or circumstances requiring a waiver of the time limit. Appellant timely appealed to the EEOC, which affirmed the agency's decision. The EEOC subsequently sent notice to appellant of his right to file a civil action.
 
 
 36
 The "right-to-sue letter" from the EEOC indicates that Kalra exhausted his administrative remedies and was therefore properly before the district court. See Carter v. Smith Food King, 765 F.2d 916, 923 (9th Cir.1985) ("A right-to-sue letter would be a contradiction in terms if it did not mean that the recipient had exhausted his administrative remedies and had met all the statutory prerequisites to the filing of a lawsuit.") There may be an issue as to whether appellant's untimely EEOC filing bars a subsequent suit in federal court despite the right-to-sue letter.
 
 
 37
 Because appellee has failed to give this court any direct authority which supports its contention,[11] and because the case for affirming the judgment on the merits is so strong, we need not address the timeliness issue on this appeal.
 
 III. CONCLUSION
 
 38
 Because appellant has failed to meet his burden of pointing out specifically wherein the magistrate's findings are clearly erroneous, we affirm the magistrate's judgment for the defendant. Appellant has merely reargued the facts in an improper effort to get this court to retry the case. At trial, the defendant offered clear and convincing evidence that it had a legitimate, nondiscriminatory reason for refusing to hire appellant. Appellant has now twice failed to rebut this showing.
 
 
 39
 Affirmed.
 
 
 
 *
 Honorable Robert J. Kelleher, District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Qualified applicants are certified eligible, ranked under a particular rating schedule and listed on a certificate of eligibles that is forwarded to the agency with the job vacancy
 
 
 [2]
 Appellant's application was not on file with the OPM in time to be considered for this position and there was no evidence that the Survey Office had before it any other applications from qualified citizens
 
 
 [3]
 OPM decided it was not required to re-examine its inventory of potential applicants before approving the extension request. There was no evidence of discriminatory treatment with regard to appellant and this request for an extension
 
 
 [4]
 As office chief, Hanks was primarily responsible for the processing of job applications submitted to the Survey Office
 
 
 [5]
 Indeed, the previous holder of the position did not have a Ph.D
 
 
 [6]
 He expected a qualified applicant to have a substantial background in earthquake engineering or research, as evidenced by professional publications and research articles
 
 
 [7]
 To make out a prima facie case of discrimination, a plaintiff must ordinarily show that he (1) belongs to a protected class, (2) applied and was qualified for a vacant position the employer was trying to fill, (3) was rejected for the job, and (4) that after his rejection the employer continued to seek applicants of plaintiff's qualifications. McDonnell Douglas, 411 U.S. at 802
 
 
 [8]
 e.g., the ability to develop analytical techniques for analyzing strong-motion records from instrumented structures, and knowledge of engineering and/or structural dynamics related to earthquakes
 
 
 [9]
 On his OPM application, appellant did not supply any information regarding the requested "Important knowledges, Skills and Abilities," or information of "Publications," "Achievements" and "Professional Development."
 
 
 [10]
 Kalra waited for more than five months after the alleged discriminatory act before filing the claim with the EEOC
 
 
 [11]
 In each of the cases cited by appellee, it is not clear whether the administrative agency rejecting the claim as untimely issued a right-to-sue letter to the claimant